## THE ILLINOIS.

### HEFFERIN v. THE ILLINOIS.

(District Court, E. D. Pennsylvania. August 7, 1894.)

No. 12 of 1894.

1. SHIPPING—INJURIES TO STEVEDORE—UNSAFE DECKS.

A laboring stevedore, being ordered into the forward hold of a steamship to stow cargo, in passing down the forward hatch got off on the orlop deck, immediately above the hold, and, going forward about twelve feet in the dark to strip, and leave his clothes, stepped into an unguarded hole four to six feet long and four to six inches wide, and was injured. It is the custom of such workmen to leave their clothes on the deck above which they work. *Held* that, in view of the custom, it was the duty of the steamship to keep the deck in a safe condition, and, the hole being an unusual one in such ships, she was liable for the injury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

The stevedore was not guilty of contributory negligence, for he had a right to assume that the deck was safe, and was not bound to get a light, or to wait until his eyes became accustomed to the darkness.

This was a libel by Michael Hefferin against the steamship Illinois to recover damages for personal injuries.

Samuel E. Maires and Curtis Tilton, for libelant.

N. Dubois Miller and Biddle & Ward, for respondent.

BUTLER, District Judge. I find the facts to be as follows: The libelant, a laboring stevedore, who was employed to assist in stowing cargo on the steamship Illinois, was ordered into the forward hold to work. In passing down the hatch he got off on the "orlop" deck, immediately above the hold, and going forward about twelve feet to strip and leave his clothes, stepped into an open and unguarded hole, four to six feet long, and four to six inches wide; and was seriously hurt. This deck is dark, and around the hatch for a considerable distance was covered with dunnage, which consisted of blocks of wood, soiled with oil and dust. It is the custom of such workmen to strip off and leave their outer clothing on the deck next above where they work. The water for their use is also kept there. Two unguarded holes, as described, at least, existed in the deck at the point where the accident occurred. Whether more existed, as the libelant asserts, need not be determined. If the two admitted by the respondent to be there were in a part where the libelant had a right, and therefore might be expected, to go, they should have been guarded; and the respondent's negligence is as great as if more existed. They were unusual holes, such as are not found in vessels of this character, devoted to the service in which it was engaged. The deck was dark, and the holes could not be seen by one entering as the libelant did.

On these facts the case cannot be distinguished from The Protos, 48 Fed. 919. The libelant had a right to go where he did to strip and leave his clothes. He was not restricted to any particular part of the deck, convenient to the hatch, in the absence of notice to that effect. He could use his own discretion in selecting a place. He

was justified in assuming that the entire deck in that vicinity was safe. He passed but a few steps from the hatch; little, if any more than far enough to get beyond the soiled dunnage. Some of his fellow workmen left their clothes near by. It follows that the respondent was guilty of negligence in allowing the holes to be uncovered and unguarded.

Was the libelant also guilty of negligence? I do not think so. It is said he should not have gone forward in the dark; but he could not be expected to get a light, or to wait until his eyes became accustomed to the situation. He might justly have been censured if he had. It was his duty to assume that the deck was safe so far as he had occasion, or it was customary for workmen to use it. Any delay on account of the darkness would have subjected him to ridicule if nothing worse. The respondent produced testimony to show that it is not customary for men laboring in the hold to change their clothes on the "orlop" deck. The weight of the testimony is, however, as I have found the fact. Nevertheless, if it were true, as the respondent's witnesses state, substantially that it is customary to strip off and leave the clothes on any one of the decks the workmen see fit, then it would be the respondent's duty to have all the decks safe for this use. Wherever the workmen have occasion to go, or customarily go, in the course of their employment, the vessel must be safe.

It was urged that the libelant should not have gone so far forward. He gives his reasons for going there, and they sustain him, as does also the testimony of other witnesses called. But in the absence of this testimony he would be justified. He could not be expected to confine himself to any particular part of the deck convenient to the hatch. One man would go to one part, and others to other parts, as their minds suggested. Nor could he be expected to go directly, in a straight line, to the spot where he proposed to strip, and straight back; it would not correspond with what men generally do under such circumstances, and would therefore be unreasonable. Every part of the deck to which it might be anticipated the men would go should have been made safe.

It is further urged that the libelant went to this particular place to urinate, that this was an improper object, and consequently that the respondent is not liable for the injury. Two questions are thus raised. The last of them need not be considered. The testimony respecting the first is conflicting. The burden of proof is on the respondent. I do not propose to discuss the testimony. It is sufficient to say that it does not prove that the libelant did not go there to strip and leave his clothes. That he urinated there, and that he intended doing so, when he went, is not in my judgment proved; on the other hand, I believe the weight of evidence is against it. But to prove that he urinated there, and even that he intended to do so when he went, would not be sufficient to sustain this defense—granting it to be sound. It must further appear that he did not go there to leave his clothing, but simply to urinate. He left his clothing there, and the presumption, even in the absence of his positive statement respecting it, is that he went for

that purpose. If he did go for that purpose, the fact that he urinated there, would be unimportant; and that he intended to urinate there when he went would be equally unimportant, if he went to leave his clothes.

To sustain this branch of the defense, the facts, on which it rests should not be left in doubt. The respondent was guilty of plain, if not gross negligence, which tended directly to the accident—negligence which, in the ordinary course of events, would lead to it. When therefore he charges the result to misconduct of the libelant, he should be held to clear proof of his charge. While I abstain from the useless task of discussing the conflicting testimony on this point, I may call attention to the fact that the respondent's witnesses are almost exclusively his employés, or agents (of the ignorant class engaged in such work); that the testimony consists in alleged confessions of the libelant, made immediately after the accident, when he was suffering intense pain, or after being taken to the hospital, and when, as his attendants and nurses say, he was generally insane in consequence of his injuries. That the witnesses should have held such conversations with him as they relate at the times referred to. seems very extraordinary; that he should have been substantially scolded or remonstrated with by them (his fellows) for going where he went, just after the accident, in his then deplorable condition seems incredible; and it is not less so that men who had learned how the accident occurred should have gone to the hospital, and in his condition at the time, sought to have him explain the occurrence. The witness relied upon to prove that he saw the libelant urinating on the deck does not say in terms that he saw it. The language is equivocal. If he meant this, as probably he did, he should have said it; should have been required to say it. But if he had said it. it would simply be saying that while there changing his clothes, he urinated—which as we have seen would be unimportant. This witness, in substance, says he changed his clothes there. In view of the libelant's positive statement, and the testimony of his witnesses on this subject, I cannot, as before stated, regard the allegation as proved.

A decree may be prepared sustaining the libel.