THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. JOHN B. CROSS *et al.*

### No. 9964.

1. CONTRIBUTORY NEGLIGENCE — *question for jury whether crossing track, as people in habit of doing, in rear of train obstructing street crossing, is. Duty of employees, when such custom known, to move train with due caution.* In the little town of R., which is located on both sides of the tracks of a railroad company, the company stopped its trains on a side-track so as to completely obstruct all travel from one part of the town to the other for about twenty-five minutes. It had been accustomed at intervals to so obstruct the streets, and the public were in the habit of climbing over, crawling under, and going around its trains. E. C., a boy thirteen years old, for the purpose of going to his home attempted to pass around the rear end of a freight train which was so blocking up the crossings, and was struck and killed by the rear end of a train which had just commenced to move backward. *Held, first,* that it was for the jury to say from the facts disclosed by the evidence whether, under the circumstances, license was given to the public to cross the tracks around the trains on the company's right of way; and that the court will not declare, as a matter of law, that it was negligence which will bar a recovery for the boy to attempt to cross behind the rear end of a freight train so obstructing the crossings; and *second,* that, under the conditions stated, it was the duty of the employees in charge of

the train to move it with reference to the known custom of the people, and to take due precautions to avoid injury to any one who might attempt to cross behind the train.

2. ERROR CURED — *in overruling demurrer to evidence if defendant's evidence supplies the deficiency in plaintiff's case.* Where the evidence offered by the plaintiff is deficient and a demurrer thereto is overruled, if the defendant supplies the deficiency by testimony offered in its behalf the error in overruling the demurrer is rendered immaterial, and this court will not reverse the judgment because of the insufficiency of the testimony offered by the plaintiff.

3. NEGLIGENCE CAUSING DEATH OF MINOR SON — *jury not restricted to value of services during minority.* In an action brought by parents against a railraod company to recover damages for negligently causing the death of their minor son, the jury are not necessarily restricted to an allowance of the value of the son's services during minority, but may take into consideration pecuniary benefits which the parents may reasonably be expected to receive from him after reaching his majority.

Error from Lyon District Court. Hon. W. A. Randolph, Judge. Opinion filed July 10, 1897. *Affirmed.*

*A. A. Hurd* and *Stambaugh & Hurd*, for plaintiff in error.

*Waters & Waters* and *Buck & Spencer*, for defendants in error.

ALLEN, J. At Reading, a small town in Lyon County, the tracks of the Atchison, Topeka & Santa Fe Railroad Company are crossed by the three streets of the town which run north and south. There are three railroad tracks crossing these streets. The north one is a side-track called the passing track. Next is the main track, on the south side of which the station house is located. South of this is what is called the house track. The town of Reading is built on both sides of these tracks. At about three o'clock in the afternoon of December 10, 1892, a freight train going west was run onto the passing track and stopped so as to obstruct the crossings of all three of

these streets. There is testimony showing that this obstruction continued for twenty-five or thirty minutes, leaving no opening on either street for persons desiring to cross. After the freight train had been so placed on the passing track, a west-bound passenger train was run in behind it on the same track. In front of it were a number of empty cars, thus nearly filling the track between the switches. While these trains were standing on the side track, a passenger train going east passed them on the main line. Elmer Cross, a son of the plaintiffs, had been waiting on the north side of the passing track for twenty or twenty-five minutes to cross to the south side where his home was with his parents. He was a boy thirteen years of age. At about the time the east-bound train passed, he had started to go around the rear end of the freight train. The west-bound passenger train had backed onto the main line, and was proceeding west, with its steam cocks open emitting a cloud of steam, as the boy attempted to pass the rear end of the way car of the freight train. The freight train then commenced backing, without any signal by bell or whistle and without any guard on the rear end of the train, striking the boy and dragging him for a considerable distance along the track, killing him almost instantly. It appears that these crossings were frequently blocked by the defendant's trains for considerable periods of time ; that persons desiring to cross were in the habit of climbing over, crawling under, and going around the trains ; and that the employees of the Company, in charge of this particular train, knew that they were accustomed to do so.

It is insisted on behalf of the Railroad Company that its demurrer to the testimony offered by the plaintiffs should have been sustained, and that there can be no recovery on the facts disclosed. It is urged that

Elmer Cross was a trespasser on the grounds of the Company, because the place where he was killed was not a street crossing or other place where he had a right to cross the defendant's right of way ; that there is no evidence indicating a wilful or wanton injury, and that the defendant owed him no duty which it did not perform.

Under the facts disclosed in this case, we think the question was properly submitted to the jury as to whether there was not a license given to the public to pass around the company's trains while the street crossings were obstructed. It was certainly unreasonable for the defendant to keep its trains standing across all the streets of the town for so long a time and deny the public any opportunity to cross. It being known by the employees on the train that people were in the habit of going around its trains, it was incumbent on them to move the train with reference to such known practice, to give proper signals when starting, and to have some one at the rear end of the backing train to guard against accident. The testimony of the train hands discloses that it was understood by them to be the duty of the rear brakeman to be on the hind end of the way car when the train backed. There is testimony showing that no one was there. It is said that the evidence offered by the plaintiff does not show how Elmer Cross came to his death. None of the plaintiff's witnesses saw him when he was struck by the way car. The first they knew of the casualty was when he was being taken out from under the cars, after several cars had passed over him. Whether the plaintiff's testimony was sufficient to take the case to the jury, it is unnecessary to decide, for any lack of proof on that point was afterward supplied by the defendant. A brakeman on the west-bound passenger train testified that he saw Elmer on the track before

the way car struck him, and that there was no one standing on the rear end of the way car.

On the merits of the case, we think there was ample proof showing negligence on the part of the Company; and that it cannot be said, as a matter of law, that the boy was guilty of contributory negligence, but that the question was one for the jury.

The averments of the petition with reference to the blocking of the streets by the defendant at this particular time, and also its custom of doing so, and the custom of people to cross its tracks over, under, and around its trains, were proper, and the court did not err in refusing to strike them out. Evidence in support of them was also proper.

Instructions were asked by the defendant limiting the amount of the recovery of the plaintiffs, who were the parents of the boy who was killed, to the net earnings of the boy during his minority. The instructions asked are erroneous. While the plaintiffs would have no right to take the boy's earnings without his consent after he should reach his majority, it might well be that the ties of natural affection would be sufficiently strong to cause him to do them even more service after his majority than before. A recovery by parents for the death of a son after his majority is not at all uncommon. In the case of *St. L. & S. F. Rly. Co. v. French* (56 Kan. 584), a judgment for forty-five hundred dollars in favor of a widowed mother, fifty-nine years of age, for the death of a son thirty-four years of age, was affirmed by this court. The judgment in this case is for four thousand dollars — five hundred dollars less than in the case cited. We think the substance of the ninth and twelfth instructions was included in those given by the court, although in different language. The eighth instruction is criticized, and the part singled out, in which it is stated, "I instruct you

that the defendant was negligent in blocking up the streets for such an unreasonable time,'' is objectionable. The language which immediately follows it, however, shows that the court did not intend to convey the idea that a verdict against the Company might rest on this act of negligence. The whole instruction reads as follows :

'' 8. If you believe from the evidence that the defendant blocked the streets crossing its tracks, by its standing trains ; that such blocking prevented the crossing of its streets for an unreasonable period, taking into consideration the place, time and situation ; that the deceased came to one of the blocked-up streets and, after waiting a reasonable time under the circumstances to cross, that he then went eastward to cross the tracks by going around the hind end of the train, and that, attempting to go around the rear end on the side-track, and while in that immediate vicinity, a passenger train went west on the main line or track, passing the hind end of the train on the side track, at the time making escaping steam from its cylinder cocks ; that the deceased's attention was drawn or attracted by such passenger engine, and, in endeavoring to escape, he stepped onto or remained on the side-track ; that it had been the frequent practice of the defendant to block up these streets, immediately and just before he was killed, so that the travel had been in the habit of crossing its cars, going under its cars, or around the ends of its trains in order to cross ; that such habit had been so frequent and long continued for the defendant to know it, or it had reasonable opportunity to know of it ; that the deceased was hit by the hind end of the train on the side track, as it backed east ; that there was no sufficient or efficient warning or notice given by whistle, bell or otherwise, of such backing ; and that the deceased was in the exercise of care and was without fault ; then I instruct you that the defendant was negligent in blocking up the streets for such unreasonable time ; that the deceased had the right to take any way to cross the tracks that would have been prudent and

proper for an ordinary person of his years to have taken ; that, if the habit of travel across these tracks in a similar way had, by reason of the conduct of the defendant in the management of its trains, been long continued, you have the right to consider such testimony for the one and only reason or purpose of determining whether the defendant should have been aware of, and moved its trains with reference to, such a condition of travel ; and that, whether in this case it was negligent or not in moving its train without warning or notice, it is for you to say from all the facts and circumstances, who, if any one was chargeable with negligence.''

The answer of the jury to the last special question submitted to them shows that that they had a clear understanding of the issues involved, and the objectionable expression evidently did not affect the verdict. The question and answer are as follows :   '' Ques. 9. If you find for the plaintiff, state what act of negligence the defendant or its employees was guilty of, which caused the death of the deceased, Elmer Cross. Ans. *First*, blocking the streets for an unreasonable length of time ; *second*, not giving proper signal when backing train No. 41; *third*, also neglect to have rear brakeman of same at his proper place.''   We find no merit in the claim of error in the instructions as to the measure of damages, nor in the claim that the sum awarded is excessive.

The judgment is affirmed.