THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. MATEO FAJARDO *et ux.*

No. 14,709. (86 Pac. 301.)

SYLLABUS BY THE COURT.

1. DEATH BY WRONGFUL ACT—*Parties—Non-resident, Alien Parents.* Non-resident, alien parents, next of kin of a minor son whose death was wrongfully caused by the negligence of another, may maintain an action to recover for his death.

2. ―――― *Requisite Proof of Anticipated Benefits—Verdict Not Excessive.* In such a case proof as to the value of actual services rendered or which might have been rendered by the minor son is not indispensable to a recovery, but there must be evidence to justify a reasonable expectation of pecuniary benefit to his parents in the continuance of his life. In the present case it is *held,* that the testimony of the age, intelligence and habits of the minor, his relationship and disposition toward his parents, and of their situation, is deemed to be sufficient to justify a reasonable expectation of future benefits, and to sustain the award which the jury made.

Error from Shawnee district court; ALSTON W. DANA, judge.  Opinion filed July 6, 1906.  Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*B. J. Horton, R. S. Horton,* and *Bishop & Mitchell,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:  This was an action for the negligent killing of Carlos M. Fajardo, brought by his father and mother against the Atchison, Topeka & Santa Fe Railway Company.  The Fajardos were native-born inhabitants of Porto Rico, and the parents still reside there.  Carlos, who was over sixteen years of age when he died, had been sent to school in New York for about two years, after which he was placed in the University of Kansas, where he was being fitted for professional life in the law department of that institution.  In June, 1903, he started on a trip to Porto Rico to spend the vacation with his parents, but was killed in a head-on railroad collision within the limits of Kansas.  The father and mother, who were next of kin, brought this action to recover the value of his life, and the jury awarded them $4000.

It is argued that the Fajardos cannot maintain the action because they are aliens, or at least are not entitled to the protection of the statutes enacted for the benefit of the people of the state.  It is difficult to think of native-born inhabitants and residents of Porto Rico as aliens.  Living as they do in territory belonging to the United States, under laws enacted and regulations prescribed by the United States, and owing no allegiance to any other nation than our own, it is not easy to regard them as aliens who should be excluded from the courts and denied the remedies provided in our statutes.  Some question has arisen as to whether the revenue provisions of the federal constitution apply to

the territories recently acquired from Spain, and as to their exact status in our government, but it is unnecessary in this case to determine whether Porto Ricans are within the scope and operation of all our laws, fundamental and statutory, or whether legislation by congress extending citizenship to them and fixing their status in our government is necessary. If we assume that they are not in fact citizens of the United States, the plaintiffs were nevertheless entitled to maintain the action. The statute which permits a recovery in behalf of next of kin for wrongful death does not make it conditional on the plaintiff's being a citizen of the United States. It provides:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." (Code, § 422; Gen. Stat. 1901, § 4871.)

As will be observed, the only conditions prescribed are that the act or omission which caused the death shall be such that if the party killed had lived he might have maintained an action against the wrong-doer for the injury resulting from the same act or omission; that the personal representatives of the deceased must begin the action within two years; and that the damages, which are limited to $10,000, must inure to the next of kin. The section giving the right of action is general in its terms and appears to apply to all widows and children or next of kin of the deceased, regardless of residence or nationality. A number of cases brought under this section, where the beneficiaries were aliens, have passed through this court without contest, on the theory that this remedy, like all common-law remedies,

was available alike to residents and non-residents, citizens and aliens. While statutes enacted by the legislature have no operation outside the state, they do apply to all who come within the state, and to all rights arising within its limits. In jurisdictions where common-law principles obtain, and where no exceptions have been made, the theory is that the statute-law is all-pervading, operating alike upon all who are or come within the state. It recognizes every right arising within its jurisdiction. Generally speaking, all who are or come within the bounds of the state must yield obedience to the law, and all may appeal to it for protection and avail themselves of its remedies. It is true that an action for wrongful death could not be maintained under the common law until what is known as Lord Campbell's Act, and state statutes similar to it, were enacted. The passage of these acts, however, removed the obstacle to a recovery for negligent killing, and the right of action is now as available as any of the common-law remedies. The statute giving the right of action is remedial in character, and should receive a liberal interpretation, with a view of extending the remedy to those who have suffered damages from the death of a relative which was caused by the wrongdoing of another.

It is said that the remedy is not available to aliens because they are not specifically mentioned in the statute; but our legislature has never proceeded upon the theory that it was necessary to enumerate the classes to whom the law should apply, nor that the remedies afforded should not be available to aliens unless expressly conferred upon them. A great many statutory remedies are given in the Kansas statutes, but it has never been supposed that they were to be withheld from non-resident aliens because not expressly enumerated in the statute. On the other hand, it has been the theory that in the absence of an express exception the remedies provided by statute are open to every one who

appeals to our courts to the same extent as are the ordinary common-law remedies. The courts in interpreting similar statutes have held that non-resident aliens were entitled to avail themselves of the remedy given. In Massachusetts it was held that a non-resident, alien mother might recover for the wrongful death of her son. (*Mulhall v. Fallon*, 176 Mass. 266, 57 N. E. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309.) The same view was taken of the same statute in the United States circuit court in *Vetaloro v. Perkins*, 101 Fed. 393. In Iowa, where an Italian resident of that state was killed, it was held that his mother, who resided in Italy, might recover damages resulting from her son's death. In deciding the question it was said:

"Under the common-law theory, laws are territorial in their operation; and, while a sovereign may legislate with reference to its subjects outside of its territorial jurisdiction, general legislation is assumed to apply to all persons residing, all property situated, and all rights arising within its territorial jurisdiction, regardless of the status of the parties, as being citizens or aliens. As to the rights arising or recognized within the jurisdiction, a non-resident alien may maintain suit in the courts without any special statutory authority." (*Romano v. Brick & Pipe Co.*, 125 Iowa, 591, 593, 101 N. W. 437, 68 L. R. A. 132, 106 Am. St. Rep. 323.)

In Illinois, in the case of *Kellyville Coal Co. v. Petraytis*, 195 Ill. 215, 63 N. E. 94, 88 Am. St. Rep. 191, a non-resident, alien mother brought an action against a coal company for negligently causing the death of her son in a coal-mine in that state. The supreme court sustained her right to maintain the action, saying:

"It may be said here that neither citizenship nor residence is requisite to entitle a person to sue in the courts of Illinois. That right is certainly not questioned when sought to be exercised here by citizens of other states, and we perceive no reason why it should be granted to citizens of other states of the Union but denied to persons living in foreign countries." (Page 218.)

The supreme court of Minnesota, in the case of *Renlund v. Commodore Mining Co.*, 89 Minn. 41, 93 N. W. 1057, 99 Am. St. Rep. 534, had before it the question whether a non-resident alien might bring an action under a statute authorizing the next of kin to sue for compensation for the death of a human being due to the negligence of another. In construing the statute, and holding that the action could be maintained, it was remarked:

"The object of the statute was to remedy the harshness of the common law, and in some degree compensate those dependent upon the person killed. It would indicate an unnatural and selfish motive to draw a distinction between the dependent relatives who reside in another state or foreign government and those residing in our own state; and, unless such intention is manifest, we are not at liberty to assume that the lawmakers were legislating upon any such basis." (Page 47.)

A statute similar to our own was considered by the appellate court of Indiana in the case of *Cleveland, etc., R. Co. v. Osgood*, 36 Ind. App. 34, 73 N. E. 285, which was an action for wrongful death, and where the next of kin for whom the action was brought were aliens. It contained no exceptions because of alienage. The court treated the statute as remedial, one to be interpreted liberally, and, in upholding the right of an alien to its benefits, said:

"The statute is broad and inclusive in terms. No exception is made where the beneficiaries named are aliens. To deny the action because the widow, children or next of kin are aliens and non-residents is to incorporate into it a restriction which it does not contain." (Page 38.)

The supreme court of Arizona, in the recent case of *Bonthron v. Phœnix Light & Fuel Co.* (Ariz., 1903), 71 Pac. 941, 61 L. R. A. 563, held that residents of Canada might maintain an action under the statute for the negligent killing of their son in Arizona. After

a general review of the authorities the court determined that the weight of authority, both in this country and in England, was in favor of the theory that the remedy was equally open to aliens and citizens of this country. It was remarked:

"We do not think that, in order to entitle an alien to maintain this action, specific authority therefor must be granted such alien by the legislature. The act is broad and comprehensive, and by its terms includes any surviving husband, wife, child, or parent, irrespective of their residence or citizenship; and this includes aliens, in the absence of any restrictive legislation. We know of no rule of law that prohibits the legislature from extending such rights to non-resident aliens, or prevents their accepting the same. As Mr. Chief Justice Holmes said, in effect, *supra,* legislative power is territorial, and restricted thereto only so far as it imposes duties on persons outside its jurisdiction, and not in so far as it confers benefits. The object of the act is to extend beyond the limits of the common law the right to recover reparation for a wrong, and we fail to see why, the wrong having been committed, the same reparation should not be made, whether those entitled to it are citizens of a state of our Union, or citizens of that country whose law we have inherited, and whose legislation in this instance we have adopted." (Page 943.)

Under the New York statute allowing a recovery by the next of kin for wrongful death it was held that an action might be maintained for the death of a resident alien by his next of kin, who were aliens residing in the province of Macedonia, in the Ottoman empire. (*Tanas v. Municipal Gas Co.,* 88 N. Y. Supr. Ct., App. Div., 251, 84 N. Y. Supp. 1053. See, also, *Luke v. Calhoun County,* 52 Ala. 115; *Augusta Railway Co. v. Glover,* 92 Ga. 142, 18 S. E. 406; *Chesapeake, Ohio & Southwestern Railroad Company v. Higgins,* 85 Tenn. 620, 4 S. W. 47; *Philpott v. The Mo. Pac. Ry. Co.,* 85 Mo. 164; *Stewart v. Baltimore & Ohio Railroad Co.,* 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537.)

Opposed to these authorities are the cases of *McMil-*

*lan v. Spider Lake S. M. & L. Co.*, 115 Wis. 332, 91 N. W. 979, 60 L. R. A. 589, 95 Am. St. Rep. 947, *Deni Appellant, v. Penna. R. Co.*, 181 Pa. St. 525, 37 Atl. 558, 59 Am. St. Rep. 676, and *Brannigan v. Union Gold-Min. Co.*, 93 Fed. 164, but they appear to have been based largely on the theory that the English courts had held under Lord Campbell's Act that its benefits were not available to non-resident aliens. The case of *Adam v. British and Foreign Steamship Company*, (1898) 2 Q. B. 430, did so hold, but the doctrine of that case was repudiated in the recent one of *Davidsson v. Hill* (1901), 2 K. B. 606, which, together with The Guldfaxe, L. R. 2 Adm. & Ecc. 324, and The Explorer, L. R. 3 Adm. & Ecc. 289, in effect holds that a non-resident alien may maintain an action under Lord Campbell's Act. It thus appears that the weight of authority in both countries is that alienage is not a condition affecting a recovery under such acts.

It is argued, however, that the effect of section 422a of the civil code is to exclude foreigners from the benefit of the remedy. That section provides:

"That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in section 422 of chapter 80, Laws of 1868, is or has been at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in said section 422 may be brought by the widow, or where there is no widow, by the next of kin of such deceased." (Gen. Stat. 1901, § 4872.)

This provision was enacted so that the right given by section 422 (Gen. Stat. 1901, § 4871) might be more effective. It had been decided that only the representatives of a deceased could bring the action in behalf of the next of kin; also, that an administrator could not be appointed unless there was an estate to be administered, and that the claim against the wrong-doer responsible for the death was not an asset of the

estate of the deceased. (*Perry, Adm'r, v. St. J. & W. Rld. Co.*, 29 Kan. 420; *Wheeler, Adm'r, v. St. J. & W. Rld. Co.*, 31 Kan. 640, 3 Pac. 297; *Limekiller, Adm'x, v. H. & St. J. Rld. Co.*, 33 Kan. 83, 5 Pac. 401, 52 Am. Rep. 523; *U. P. Rly. Co. v. Dunden,* 37 Kan. 1, 14 Pac. 501; *Estate of Mallory v. B. & M. R. Rld. Co.*, 53 Kan. 557, 36 Pac. 1059; *City of Eureka v. Merrifield,* 53 Kan. 794, 37 Pac. 113.) To meet this contingency, and to enable the next of kin to recover where no administrator had been or could be appointed, the supplemental section was enacted. Its purpose was to extend, not to restrict, the remedy. The essential features of the right of action are given in section 422, while section 422*a* provides an additional method of enforcing the right. In speaking of the function of the later section, in *Berry v. K. C. Ft. S. & M. Rld. Co.*, 52 Kan. 759, 34 Pac. 805, 39 Am. St. Rep. 371, this court said:

"It does not create a new cause of action. No amount of damages or any limitation is stated therein. It is simply a change of remedy. Its purpose is that the cause of action given by section 422 shall not lapse or be abortive by reason of the non-residence of the deceased, or the non-appointment of a personal representative." (Page 770.)

It is manifest from the history of the legislation, as well as the language of the acts, that the legislature did not intend to take the remedy away from the next of kin of the deceased, but rather to make it easier for them to enforce it. The supplemental act provides a way of bringing an action where the deceased was not a resident of the state and there was no representative who could bring the action, or where he was a resident of the state and no representative had been or could be appointed. Residence in another state or territory means a residence outside of Kansas. So it was said in *A. T. & S. F. Rld. Co. v. Napole,* 55 Kan. 401, 40 Pac. 669:

"The later provision of the statute is supplemental to section 422, and is intended to make an existing

cause of action available where the deceased was a non-resident of the state, or where, being a resident, no personal representative is or has been appointed. It has been held that the amendment does not create a new cause of action nor impose any limitation on an existing one. It simply changes the remedy, by providing that the cause of action given by section 422 shall not be lost on account of the non-residence of the deceased or the non-appointment of a personal representative." (Page 416.)

There is a contention that the damages awarded— namely, $4000—are excessive. No questions of greater difficulty are presented than those involving the pecuniary loss which next of kin suffer in the death of a child. No precise measure has been found, nor is it easy to state the quantum of proof which will give a basis of recovery. It is said that it must be left largely to the discretion of the jury; but it is also ruled that damages cannot be rested on the conjecture of jurors, but must be supported by proof tending to show pecuniary benefits already realized or in reasonable expectation from the continuance of the life. (*Coal Co. v. Limb*, 47 Kan. 469, 28 Pac. 181; *Railway Co. v. Ryan*, 62 Kan. 682, 64 Pac. 603; *Railway Co. v. McLaughlin*, 73 Kan. 248, 84 Pac. 989.) Where the deceased was a minor and lived with his parents, who would have been entitled to his services had he lived, there is an implication of pecuniary loss, but a substantial amount cannot be recovered unless the circumstances proved, as to age, intelligence, conduct and relationship, furnish a basis for a reasonable expectation of pecuniary benefit. It is not essential to a recovery in the case of a child that there should be proof of valuable services already rendered, nor direct evidence of the exact value of the services which would have been rendered had it lived, nor yet a fixed amount of pecuniary loss sustained in its death. This is not practicable. In *U. P. Rly. Co. v. Dunden*, 37 Kan. 1, 14 Pac. 501, the child for whose death the action was brought was nearly twelve years

old, and the difficulty of measuring the pecuniary damage in the absence of direct evidence as to loss was considered. It was there said:

"The jury had presented to them evidence of the parents of the deceased; their position in life; the occupation of the father; the condition of his health; the age of his son; his intelligence; his ability to earn money, etc.; and it was their province, from this evidence and their general knowledge, to form an estimate of the damages with reference to the pecuniary injuries, present and prospective, resulting to the next of kin. It is impracticable to furnish direct evidence of the specific loss occasioned by the death of a child; and to hold that without such positive proof a plaintiff could not succeed would in effect defeat any substantial recovery." (Page 5.)

Here the situation and relation of the parents and the child were shown. The boy's conduct, declarations, and disposition toward his father and mother, as well as his age and intelligence, were in evidence and furnished a basis for a reasonable expectation of prospective benefits. The parents had sent him to New York and Kansas to be educated, at considerable sacrifice and expense, and his superior training and qualifications gave him greater earning capacity to render assistance to his parents. In view of his devotion to them it is not unreasonable to infer that their kindness to, and sacrifices for, him were and would have been fully appreciated and reciprocated. The expectation of benefits, too, is not limited to minority. In *Railroad Co. v. Cross*, 58 Kan. 424, 49 Pac. 599, it was said:

"While the plaintiffs would have no right to take the boy's earnings without his consent after he should reach his majority, it might well be that the ties of natural affection would be sufficiently strong to cause him to do them even more service after his majority than before. A recovery by parents for the death of a son after his majority is not at all uncommon." (Page 428.)

Considering all the circumstances brought out in the

testimony, there was a basis for a well-founded expectation of pecuniary benefits to the parents had the son lived, and in view of the station in life which they occupied the amount awarded cannot be said to be excessive. The judgment is affirmed.

All the Justices concurring.