THE PITTSBURG' VITRIFIED PAVING & BUILDING .BRICK COMPANY v. EDWIN FISHER, as *Administrator, etc.*

No. 15,689.　(100 Pac. 507.)

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Injury to Employee—Unguarded Machinery—"Factory Act."* Where four men are employed to work at a certain machine in a manufacturing establishment, and the rules permit each one to take a turn at resting while the others work, a resting employee is engaged in the performance of duty the same as if he were occupied at the machine.

2. —————— *Servant within the Scope of His Employment.* While resting an employee may not needlessly wander from the

proper sphere of his work into other departments of the establishment and be within the scope of his employment; but if no resting-place be prescribed and no boundaries be fixed within which he must confine himself he may use his discretion in selecting a place to rest, and may, with due circumspection, rightfully occupy any of the vacant places in the plant near his own machine and in touch with his work from which he is not expressly forbidden.

3. ——— *Same.* In such a case the employer's duty to guard machinery according to the factory act (Laws 1903, ch. 356) extends to all places which employees might reasonably be expected to use in the performance of their duties, including the taking of turns at resting.

4. ——— *Same.* In this case it is held to be a jury question whether a resting employee who was injured by an unguarded set-screw located twenty-five or thirty feet from his own machine was at an unauthorized place.

5. ——— *Contributory Negligence.* An employee within the scope of his employment may assume that set-screws revolving so rapidly they are not visible have been guarded according to the provisions of the factory act and need not inspect machinery for them; and if he is injured by coming in contact with such a set-screw, of whose existence and danger he is ignorant, he is not guilty of contributory negligence.

6. DAMAGES—*Pecuniary Expectancy of Parents from Continued Life of a Son.* Under the facts of this case it is held that a father and mother had the right to expect to receive pecuniary benefits from the continued life of their son, and that sufficient data appeared from which the jury could compute the damages they sustained from his death.

Error from Crawford district court; ARTHUR FULLER, judge. Opinion filed March 6, 1909. Affirmed.

*A. J. Curran,* and *J. P. Curran,* for plaintiff in error.

*J. J. Campbell, J. M. Wayde,* and *C. O. Pingry,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: James Lareau was employed by the defendant to work in its brick plant. His clothing caught on a set-screw projecting from a revolving shaft in the plant and he was killed. The administrator of his

37—79 KAN.

estate sued the defendant and recovered damages for
the benefit of the deceased's next of kin, his father and
mother. The defendant prosecutes error.

At the time of the casualty Lareau's specific duties
were those of an off-bearer from a repressing-machine.
He removed pressed brick from a belt which carried
them from the repressing-machine and placed them on
a small car, or truck. Four men were employed as off-
bearers, and it was the rule that one rested while the
others worked. While sitting on an empty car at the
repressing-machine, taking his turn at resting, Lareau
was informed by an employee named Evans that Henry
Cole, the machinery foreman of the plant, had said that
a brick-making machine located twenty-five or thirty
feet from the repressing-machine was cutting bolts,
and that one of the boxes of it or near it was hot.
Lareau started toward the scene of the trouble and was
caught by the set-screw, a few feet away from the
brick-machine.

The petition counted upon the provisions of the fac-
tory act (Laws 1903, ch. 356), sections 4 and 6 of which
read as follow:

"Every person owning or operating any manufactur-
ing establishment in which machinery is used shall
furnish and supply for use therein belt-shifters, or
other safe mechanical contrivance, for the purpose of
throwing on or off belts or pulleys; and wherever it is
practicable machinery shall be operated with loose
pulleys. All vats, pans, saws, planers, cog gearing,
belting, shafting, set-screws and machinery of every
description used in a manufacturing establishment
shall, where practicable, be properly and safely
guarded, for the purpose of preventing or avoiding the
death of or injury to the persons employed or laboring
in any such establishment; and it is hereby made the
duty of all persons owning or operating manufacturing
establishments to provide and keep the same furnished
with safeguards as herein specified."

"In all actions brought under and by virtue of the
provisions of this act it shall be sufficient for the plain-
tiff to prove in the first instance, in order to establish

the liability of the defendant, that the death or injury complained of resulted in consequence of the failure of the person owning or operating the manufacturing establishment where such death or injury occurred to provide said establishment with safeguards as required by this act, or that the failure to provide such safeguard directly contributed to such death or injury."

The evidence showed that it was practicable to guard the set-screw, so that negligence *per se* on the part of the defendant was established. But the defendant asserts that Lareau was not at a place in the brick plant where he had a right to be when he was injured, and hence that he had no right to the protection afforded by the factory act and a demurrer to the evidence ought to have been sustained.

The petition alleged, and there was evidence to show, that off-bearers were instructed to keep a lookout for things going wrong about the machinery and to report such matters to the foreman. They had general instructions to look after the interests of the company, and do whatever was needed to that end. If they saw anything that was undone, or boxing needing oil, or the like, they were supposed to attend to it. When breakdowns occurred they helped to make repairs, and Lareau himself had assisted in making repairs on such occasions. The petition alleged that Lareau saw a smoking box and went to it to ascertain its condition. The jury found specially that he was not examining the box when he was injured, and such is without doubt the only conclusion to be derived from the evidence. The plaintiff's evidence established that Cole was working at the brick-machine when Lareau approached, and the defendant argues from this fact there was no occasion for Lareau to inspect, report or repair. The plaintiff tries to show by the evidence that Lareau probably could not see Cole because of Cole's position at the brick-machine. The evidence is clear that nobody directed Lareau to go over toward the brick-machine, and the defendant asserts what probably is true

—that the evidence does not show just what he was do-
ing when he was hurt. The jury found that Lareau
was in the line of his duty. Was there any evidence
to go to the jury on this proposition?

It is plain that Lareau had no knowledge of trouble
with the machinery about the brick-machine until
Evans informed him. He acted because of the infor-
mation Evans gave him and not from idle curiosity,
because he sat on the empty car until Evans delivered
his message. He rested under an obligation to take
cognizance of matters like those to which Evans re-
ferred. He was not at the time manually taking brick
from the repressing-machine, and an opportunity pre-
sented itself to be of some service to his employer. All
this being true, there was evidence enough that he
started to the supposed place of trouble in obedience to
duty. Whether he saw Cole as he approached the
brick-machine, or when he first saw Cole, if he did see
him, is not important. He was executing a justifiable
movement when he was hurt, and was inside the pale
of the protection of the factory act.

However sound the position just stated may be the
court is not disposed to rest upon it, because the evi-
dence was sufficient to authorize a finding by the jury
that Lareau was within the scope of his duty as an off-
bearer when he was injured. He was engaged in the
prosecution of the work of an off-bearer while he was
taking his respite as well as while he was taking brick
from the belt of the repressing-machine. (*Sugar Co. v.
Riley,* 50 Kan. 401, 31 Pac. 1090.) It does not appear
that the defendant had designated any particular place
as a resting-place or had prescribed any boundaries
within which resting off-bearers should be confined.
No rule of the company is shown and no rule of law is
cited which required Lareau to spend his season of
rest sitting on the empty car near the repressing-ma-
chine. He might have been required at any moment
to get out of the way of busy workmen. It was his

duty to keep himself in readiness to begin work at the repressing-machine the moment the time arrived for one of his fellows to rest, but until then he was allowed some freedom of action. He could not safely desert the proper sphere of his own work and needlessly wander about in other departments of the factory, or institute prying expeditions into affairs which lay beyond or did not concern his work. But since he was not restricted to any specific spot he could use his own discretion in selecting a place to spend his period of rest, and with due circumspection might rightfully occupy any of the vacant spaces of the factory near his own machine and within touch of his work from which he was not expressly forbidden. (*Hefferin v. The Illinois*, 63 Fed. 161.) Whether any direction except the one taken was open to Lareau when he left the empty car does not appear. Whether under the circumstances he went too far away was at least a question for the jury. The defendant's duty to guard its machinery extended to all places which off-bearers might reasonably be expected to use in the performance of their duties, including the taking of turns at resting.

It is claimed Lareau was guilty of contributory negligence. The jury returned a special finding as follows:

"Ques. If you should find the machinery was defective, you may state if such defect was open and obvious to ordinary inspection or was hidden and concealed. Ans. Open."

The uncontradicted evidence was that the machinery was in motion and that the set-screw revolved so rapidly that it was not visible. The jury found specially that Lareau had never been warned of the set-screw, did not know of its existence, did not know of the danger portended by its presence, and lacked the opportunities for knowledge of it possessed by the defendant. He had a right to assume that set-screws in revolving shafting were properly guarded, and rested

under no duty to make an inspection. Therefore the jury had good reason to conclude that he was not negligent.

Much space is given in the defendant's brief to the question whether the beneficiaries of the action had the right to expect to receive pecuniary benefit from the continued life of the deceased, and consequently whether they suffered damages from his death. The evidence and findings show that Lareau was twenty-one years old, unmarried, of normal physique, and in good health. He was industrious, steady, and without bad habits. His relations with his parents were most pleasant. He never made trouble at home or at school, was always kind to his mother, and, as his father said, they "got along fine." He had been away from home since he was nineteen, and during that time his parents made no claim to his earnings. He did as he pleased with them. He visited his parents, and a few months before his death his father visited him. Although the parents were neither old, indigent nor infirm, and were not dependent upon him for support, he was in the habit of contributing to their support, the last occasion being a short time before he was killed. Altogether he sent home some $35. At the time of his death he owned a saddle-pony and was earning $1.75 per day. His motive for leaving home was simply to see something of the world, and arrangements had been perfected for him to return home and help his father run two farms, which arrangement would have been mutually advantageous to him and to his parents. The jury gave a verdict for $500.

We have here a relationship which naturally leads to the conferring of pecuniary benefits—a willing disposition to contribute, a capability to contribute likely to increase, contributions actually made, and a definite plan from which further contributions were likely to result. It is not only reasonable to suppose but it is quite certain that these parents would have been pe-

cuniarily advantaged by the continued life of their son, and under all the decisions of this court sufficient data appeared from which the jury, taking into consideration the knowledge and experience common to all men, could compute the damage they suffered from his death. (*Railway Co. v. Fajardo,* 74 Kan. 314, 86 Pac. 301; *Railway Co. v. McLaughlin,* 73 Kan. 248, 84 Pac. 989; *Railway Co. v. Ryan,* 62 Kan. 682, 64 Pac. 603; *Railway Co. v. Moffatt,* 60 Kan. 113, 55 Pac. 837; *Railroad Co. v. Cross,* 58 Kan. 424, 49 Pac. 599; *Coal Co. v. Limb,* 47 Kan. 469; 28 Pac. 181; *U. P. Rly. Co. v. Dunden,* 37 Kan. 1, 14 Pac. 501; and cases cited in these opinions.)

Instruction No. 8 is an entirety, and not a series of disconnected and unrelated charges. When so read, as the law requires, it is neither ambiguous nor inaccurate, and very clearly did not mislead the jury. Special question No. 56 was a catch-question, and was answered with perfect truthfulness and accuracy. It was not indispensable that mortuary tables should be read in evidence. A verbal criticism of an instruction relating to the defendant's duty to provide a reasonably safe place to work is academic. The factory act fixes the duty at a much higher standard than the language criticised. The jury found that the set-screw was located within the field of defendant's duty, and did not, therefore, disregard instruction No. 4. The demeanor of the witnesses whose testimony the jury ignored may have shown them to be unworthy of belief. Other questions presented do not require special notice.

The judgment of the district court is affirmed.