No. 44,069

Ivan Wayne Corman, Administrator of the Estate of Ivan Wayne Corman, Jr., Deceased, *Appellant* v. WEG Dial Telephone, Inc., and Robert L. Feihler, *Appellees*.

(402 P. 2d 112)

Opinion filed May 15, 1965.

*Peter A. Martin*, of Olathe, argued the cause, and was on the briefs for the appellant.

*John J. Jurcyk, Jr.*, of Kansas City, argued the cause, and *Willard L. Phillips, P. B. McAnany, Thomas M. Van Cleave, Jr., James J. Lysaught, R. H. Foerschler* and *Robert D. Benham*, all of Kansas City, and *John J. Gardner* and *Joseph S. Davis, Jr.*, both of Olathe, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Fontron, J.: This case stems from the death of the plaintiff's eighteen-month old son, Ivan Wayne Corman, Jr., who was run over by a truck owned by the defendant, WEG Dial Telephone, Inc., as the same was being backed from the Corman driveway by the company's driver, the defendant, Robert L. Feihler.

Suit was filed by the father, Ivan Wayne Corman, in his capacity as administrator of his son's estate, seeking to recover $595.90, for expenses incurred, and $25,000.00 damages for wrongful death of the child. The case was tried to a jury which, after finding the defendants guilty of negligence, returned a verdict in favor of the plaintiff for $1,500.00 The trial court overruled plaintiff's motion for a new trial and entered judgment upon the verdict. From that judgment, the plaintiff has appealed.

The principal contention advanced by the plaintiff in this appeal, and the one we consider of gravest import, is that the verdict was so grossly inadequate as to require a new trial.

Since the case of *Sundgren v. Stevens,* 86 Kan. 154, 119 Pac. 322, 39 L. R. A. (NS) 487, (1911), this court has been committed to the general proposition that when a verdict is so inadequate as to indicate partiality, passion or prejudice, it should be set aside.

In a very recent decision, *Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P. 2d 60, we reiterated our adherence to that principle and said:

"The general rule is, in the absence of a statute to the contrary, that inadequacy of damages constitutes a ground for the granting of a new trial when a verdict is so inadequate as to indicate passion and prejudice. . . ." (p. 290.)

We pointed out, in Henderson, certain well recognized and basic rules to be observed in considering, on appellate review, questions concerning the adequacy of damage awards. Because those rules were so plainly and succinctly stated in the Henderson case, we feel there is no need to repeat them here.

Although questions relating to inadequate verdicts have on several occasions been presented to and ruled on by this court, we are aware of no case from this jurisdiction which has involved the precise problem presented here. We have been cited to a few infrequent cases from other jurisdictions in which damages awarded for the death of children have, on appeal, been held inadequate. Plaintiff has also set out in his brief a number of cases from Kansas and other states where verdicts involving the death of children have been upheld as not being excessive.

However, the adequacy of the plaintiff's recovery in this case cannot be determined by striking an average of amounts which juries may have allowed in other cases, either in Kansas or elsewhere. We are not at liberty to adopt a quotient rule. Each case in which the adequacy, or inadequacy, of a verdict is called in ques-

tion must be determined on the basis of its own facts. Amounts allowed in other cases can be illuminating only as they may tend to indicate the bounds beyond which a sound public conscience will permit no trespass. In *Aaron v. Telephone Co.*, 89 Kan. 186, 131 Pac. 582, this court said:

". . . In determining what allowance should be deemed excessive little aid is to be had from the adjudications, for each case turns upon its peculiar facts. . . . A mere comparison of the amount of the judgment with that sustained or set aside in other cases is obviously of little value, especially with respect to decisions in other jurisdictions, where the measure of recovery is different. . . ." (p. 195.)

It is not possible for any one of us to equate a human life with coin or currency. Under moral concepts which are basic to our kind of society, human life is beyond value. Only the Creator of life may judge the intrinsic worth of a man, or of a child. This court has said on more than one occasion that suffering is without known dimensions and that no exact relationship exists between physical pain or mental anguish and money. (*Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321; *Neely v. St. Francis Hospital & School of Nursing*, 188 Kan. 546, 363 P. 2d 438.)

In *Henderson v. National Mutual Cas. Co.*, 168 Kan. 674, 215 P. 2d 225, the court said:

". . . Many verdicts have 'shocked the conscience' of this court so that a remittitur or reversal has been ordered, but there is no uniform yardstick or hard and fast rule by which the alleged excessiveness of a verdict can be measured. . . ." (p. 683.)

The same thing, of course, may be said concerning the inadequacy of a verdict.

It was recognized quite early in the life of this state that parents have a pecuniary interest in the lives of their children and are entitled to be compensated for the pecuniary loss which they might sustain in the event of their deaths. (*A. T. & S. F. Rld. Co. v. Brown, Adm'r.*, 26 Kan. 443.) Under early statutes, financial loss was the sole and only element of damage for which recovery might be had in the loss of either a minor or an adult child.

This specific element of loss encompassed more than loss of the child's earnings during its minority; it included also the probability of financial assistance after maturity which would normally flow from the natural feelings of affection, gratitude and loyalty existing between parent and child. In *Railroad Co. v. Cross*, 58 Kan. 424, 49 Pac. 599, it was held:

"In an action brought by parents against a railroad company to recover damages for negligently causing the death of their minor son, the jury are not necessarily restricted to an allowance of the value of the son's services during minority, but may take into consideration pecuniary benefits which the parents may reasonably be expected to receive from him after reaching his majority." (Syl. ¶ 3.)

Prior to 1949 only the pecuniary loss occasioned to parents by the death of their children could be taken into account in assessing their damages. In that year, however, the legislature amended the then existing wrongful death statute and added the following provision (Laws 1947, ch. 319):

". . . Damages may be recovered hereunder for, but not limited to: (a) Mental anguish, suffering or bereavement; (b) loss of society, companionship, comfort or protection; (c) loss of marital care, attention, advice, or counsel; (d) loss of filial care or attention; and (e) loss of parental care, training, guidance or education."

Identical provisions were contained in G. S. 1961 Supp., 60-3203, and are now set forth in K. S. A. 60-1904.

In commenting on the 1947 amendment, this court, in *Kurdziel v. Van Es*, 180 Kan. 627, 306 P. 2d 159, had this to say:

". . . Prior to that enactment, the measure of damages in such an action was the pecuniary loss sustained by plaintiffs. By the mentioned act, the legislature provided that other considerations than pecuniary loss should be considered. . . ." (p. 632.)

Thus, today, in passing upon the adequacy of an award to a parent for the death of his child, not only must pecuniary loss be taken into account, but consideration must be given also to those intangibles of grief, anguish, suffering, etc., listed in the present act. While these elements of damage are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved parent, often far outweighing in severity and permanent effect the pecuniary loss involved. Particularly would this be true where the child was a beloved member of the family, as is indicated by the record here.

We entertain no doubt that the jury's verdict of $1,500.00 is inadequate. The undisputed medical, hospital and burial expenses in themselves amounted to $595.90, leaving but a paltry sum to represent the value of a human life. This court has said that in the death of a minor who lives with his parents, there is an implication of pecuniary loss. (*Railway Co. v. Fajardo*, 74 Kan. 314, 86 Pac. 301.) To similar effect, we stated in *Brick Co. v. Fisher*, 79 Kan. 576, 100

Pac. 507:

". . . It is not only reasonable to suppose but it is quite certain that these parents would have been pecuniarily advantaged by the continued life of their son . . ." (pp. 582, 583.)

We believe that an implication of loss due to bereavement and mental anguish inheres in the violent and untimely death of a child just as surely, if not more certainly, than financial impairment. The evidence shows Ivan Wayne Corman, Jr., to have been a healthy child with a life expectancy of 68.31 years. That he was held in great affection by his parents is evident from the testimony. Conceding that no monetary price tag can aptly measure the worth of the gift of life, and that cold cash can never fill the aching void left by death, we nonetheless are forced to conclude that $900.00 is absurdly insufficient recompense for the loss these parents sustained.

May it be said that the verdict is so grossly inadequate as to shock the conscience or to indicate passion and prejudice on the jury's part? Before venturing a definite answer to the query, we must point out another factor which we believe to be significant.

There is more than a suspicion that the verdict returned by the jury in this case was based on compromise. The following remarks made by the trial judge, in overruling plaintiff's motion for new trial, are enlightening in this regard:

"It is my personal opinion that they had some difficulty about finding liability at all on the part of this defendant, and that the amount of the verdict may have been influenced by their thought about the question of liability. The other thing that leads me to believe they may have had difficulty there or fixing liability or negligence on the part of the defendant, was that the jurors asked to have the testimony of two of the principal witnesses read back to them. That pertained only to the question of what happened there or what transpired there. It didn't pertain to the elements that go into making up the damages. I think the amount of the verdict, there may have been some other juror who thought for a time or about the time there was no liability at all."

These comments, coming from an astute and discerning trial judge of long and honorable experience, cast doubt upon the manner in which the verdict was reached and, in our judgment, are entitled to great respect in determining whether the verdict is just. We feel bound to conclude, under the circumstances of this case, that, in a legal sense, passion and prejudice are inherent in the verdict because of its gross insufficiency and the method by which we may infer it was reached.

As we stated in *Henderson v. Kansas Power & Light Co.*, supra, this court is fully aware that the assessment of damages in an action

of this nature is ordinarily a matter for the jury to determine and that courts must exercise great restraint in granting new trials based on the inadequacies of verdicts. Nevertheless, we are constrained to hold, from the record before us, that a new trial will serve the ends of justice.

The plaintiff urges that we grant a new trial on the issue of damages only. Although we recognize that negligence and damages are legally distinct and separable issues, and that it lies within the judicial prerogative to grant new trials on damages alone, we believe the circumstances here do not justify such action. In our opinion, the rule which should apply to the present situation is stated in the annotation found in 29 A. L. R. 2d, New Trial As To Damages Only, § 10, p. 1214, where it is said:

"A new trial as to damages alone should not be granted where there is ground for a strong suspicion that the jury awarded inadequate damages to the plaintiff as a result of a compromise involving the question of liability. Or, as is said in 98 ALR 944, if from the inadequacy of the damages awarded, in view of the evidence on the subject, or the conflict of the evidence upon the question of liability, or from other circumstances, the plain inference may be drawn that the verdict is the result of a compromise, such error taints the entire verdict, and a new trial should be ordered upon all issues."

In view of our holding announced above, it becomes unnecessary to pass upon other errors alleged by the plaintiff. We are confident that the able trial judge, before whom this action was tried, will insure an impartial trial to all of the litigants, in accordance with established rules of evidence and recognized standards of fairness.

The judgment of the court below is reversed with directions to grant a new trial.