(641 P.2d 411)
No. 52,723

Lyle Putter, Deceased, By and through his Administrator, EUGENE PUTTER; EUGENE PUTTER and DOROTHY PUTTER, Husband and Wife, *Appellants*, v. DALLAS BOWMAN, *Appellee*.

Petition for review denied May 21, 1982.

Opinion filed February 25, 1982.

*Christopher Randall,* of Turner & Boisseau, Chartered, of Wichita, for appellants.

*Thomas J. Berscheidt,* of Ward & Berscheidt, of Great Bend, for appellee.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

ABBOTT, J.: This appeal arises out of a collision between a motorcycle operated by Lyle Putter and a truck operated by the defendant, Dallas Bowman. Putter died as the result of injuries received in the collision. An action for wrongful death and a

survival action were commenced and subsequently consolidated for trial. The jury determined Putter to have been 49 percent at fault and Bowman 51 percent, and found damages in the amount of $3,212.40.

Putter's parents and administrator appeal, contending that the verdict is so inadequate that it indicates passion or prejudice on the part of the jury, and that the trial judge erred in not directing a verdict for plaintiffs on the issue of liability.

## DIRECTED VERDICT

Our standard of review of a motion for directed verdict is well established and was recently restated in *Care Display, Inc. v. Didde-Glaser, Inc.,* 225 Kan. 232, Syl. ¶ 5, 589 P.2d 599 (1979):

"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and when the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict."

We believe the trial court correctly submitted the question of comparative fault to the jury. When the evidence is viewed in the light most favorable to Bowman, as we must view it when considering a motion for a directed verdict against him, it reveals the following: The accident occurred in Kinsley, Kansas, on a level section of U.S. Highway 56. Although the State of Kansas refuses to recognize the highway at that point as a four-lane road (because it is less than one foot too narrow to meet highway standards), the City of Kinsley considers it to be four-lane. The accident happened on a clear day and both drivers had an unobstructed view of each other. Wheat harvest was being completed. Bowman had brought a partial load of wheat to the elevator in a large grain truck. Putter had grown up on his father's farm and worked there until his death. He had lived near Kinsley all of his life and would have been familiar with the general area where the accident occurred.

The grain elevator where Bowman was to unload his wheat is separated from the scales by about one and a half blocks. Bowman was proceeding from the scales to the elevator and was making a left turn across the eastbound lanes of traffic when the accident occurred. The point of impact was determined to be approximately eight feet south of the line dividing the eastbound and westbound traffic. Witnesses described Bowman's truck as

"creeping" prior to commencing the left turn, and there was evidence from which a jury could have determined its speed to be five miles per hour or less prior to commencing the turn. Bowman told a highway patrolman that he first observed Putter after Bowman started his turn and Putter was 100 feet from the truck. Witnesses testified Bowman stopped the truck prior to impact. Whether Putter had an opportunity to reduce his speed or avoid the collision after he had reason to know the truck was going to turn in front of him was a jury question. Much of the evidence is highly susceptible to conflicting interpretation by a jury. Plaintiffs' witnesses indicated the decedent was 15 to 20 feet from the truck, traveling 30 to 40 miles per hour when Bowman turned left. If so, assuming the jury found the truck to be going less than five miles per hour, the cycle would have been a considerable distance past the point of impact before the truck arrived at that point. In addition, the credibility of the testimony of two of defendant's witnesses was in issue. A priest testified he witnessed the impact, crossed the street, examined the decedent and administered the last rites before the two witnesses who testified they were following the defendant at a distance of less than one block arrived at the scene. Credibility of witnesses and determination of fault are jury issues. We conclude the trial judge was correct in submitting the comparative fault issue to the jury. We might have found a larger percentage of fault on the part of Bowman had we been the trier of fact, but that is not the test on appeal. That determination was a question for the jury, and from the record before us we are unable to say that the jury's apportionment of fault amounts to reversible error.

## DAMAGES

The jury found that plaintiffs sustained damages of $3,212.40. This figure is 75 cents less than the amount Bowman admitted to as decedent's medical and funeral expenses. We deem the 75-cent discrepancy insignificant in our decision concerning this case. The law does not concern itself with trifles. *Doner v. Deal,* 104 Kan. 793, 796, 180 Pac. 766 (1919). The question before us is whether, at least on the question of damages, plaintiffs are entitled to a new trial by virtue of the jury having limited damages to the medical and funeral expenses. Plaintiffs argue that by failing to award any damages for conscious pain and suffering, the jury disregarded the evidence pertaining to it, and this shows

passion and prejudice. The same argument is made concerning damages for wrongful death. We treat the two arguments separately, because they present separate legal problems.

The record before us gives a valid reason why the jury did not award damages for conscious pain and suffering. The jury was generally instructed what Putter's estate was seeking damages for, and conscious pain and suffering was mentioned. There is evidence in the record that Putter was conscious and that he had severe injuries. The pretrial order and also the comments of counsel during trial show that Putter's estate was seeking damages for conscious pain and suffering. The record does not contain opening statements and closing arguments, so we have no way of ascertaining how the case was argued to the jury. As we view it, the real problem concerning the failure to award damages for conscious pain and suffering is that no one requested an instruction to the jury that it *could* award damages for conscious pain and suffering, and no one objected to the failure to give such an instruction. The jury was given the instruction from PIK Civ. 2d 9.32 (1977) on wrongful death of a child. As noted in the comment to PIK Civ. 2d 9.01 (1977), when an action for wrongful death is joined with an action brought by the personal representative of a deceased for damages sustained during the deceased's lifetime, appropriate parts of PIK 9.01 as well as the appropriate instruction on damages due to wrongful death shall be given. The failure to give such an instruction is, in our opinion, clearly erroneous. The jury was specifically instructed what it could award damages for, and pain and suffering was not mentioned; thus, the earlier instruction that damages for conscious pain and suffering were being sought would be of little help in curing the failure to give an appropriate instruction. The plaintiffs did not raise the issue on appeal, however, and we decline to reverse on that basis.

A jury may not arbitrarily nor from partiality nor caprice disregard uncontradicted or unimpeached testimony, nor may it disregard the only evidence upon a material question in controversy by returning a verdict in direct opposition thereto. *Lorbeer v. Weatherby,* 190 Kan. 576, 580, 376 P.2d 926 (1962).

In *Corman, Administrator v. WEG Dial Telephone, Inc.,* 194 Kan. 783, 402 P.2d 112 (1965), Justice Fontron spoke for the court concerning the inadequacy of a verdict in a wrongful death

action. The case was one in which the jury awarded the parents $900 more than the undisputed medical and burial expenses for an 18-month-old boy. Justice Fontron said:

"However, the adequacy of the plaintiff's recovery in this case cannot be determined by striking an average of amounts which juries may have allowed in other cases, either in Kansas or elsewhere. We are not at liberty to adopt a quotient rule. Each case in which the adequacy, or inadequacy, of a verdict is called in question must be determined on the basis of its own facts. Amounts allowed in other cases can be illuminating only as they may tend to indicate the bounds beyond which a sound public conscience will permit no trespass. . . .

. . . .
"It is not possible for any one of us to equate a human life with coin or currency. Under moral concepts which are basic to our kind of society, human life is beyond value. Only the Creator of life may judge the intrinsic worth of a man, or of a child. This court has said on more than one occasion that suffering is without known dimensions and that no exact relationship exists between physical pain or mental anguish and money. [Cite omitted.]" 194 Kan. at 784-85.

The Supreme Court has pointed out that the assessment of damages is ordinarily a matter for the jury to determine, and the courts must exercise great restraint in granting new trials based on the inadequacies of a verdict. 194 Kan. at 788. When, however, the verdict is so inadequate that it indicates passion and prejudice, this court has the duty to grant a new trial. *Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P.2d 60 (1961). We are not unmindful that the decedent in the case at bar was not a minor. He was 19 years of age, living at home and working with his family in a farming operation. The record indicates there was a close family relationship, and the pain suffered by his parents is obvious and substantiated in the record. In *Roda v. Williams,* 195 Kan. 507, 514, 407 P.2d 471 (1965), the Supreme Court refused to reverse a $4,000 wrongful death award to the parents of a 20-year-old boy. The record there was silent concerning the relationship between the decedent and his parents, and it appears the verdict included over $2,000 for nonpecuniary damages. The exact amount to be awarded for nonpecuniary damages is a question for the jury. In the case before us, there was no award to Putter's parents for their nonpecuniary loss. If the jury in this case had awarded plaintiffs two or three thousand dollars more than the medical and burial expenses, our decision would be a more difficult one.

In a wrongful death action, the trier of facts is not required as a matter of law to award damages for any or all of the elements

authorized by K.S.A. 60-1904. The jury, however, must not disregard the law and evidence and award nothing when the record clearly discloses an entitlement to damages for at least some of the elements for which recovery is permitted. The record before us convinces us the verdict is so inadequate that it indicates passion and prejudice on the part of the jury and requires a new trial.

The question arises whether plaintiffs are entitled to a new trial on all issues or to one limited to the nature and amount of damages. Prior to the advent of comparative negligence (K.S.A. 60-258a), a new trial could be limited to the issue of damages when that issue and liability were separable and the interests of justice would be served by a separate trial on the single issue. A new trial on both issues was granted when the record indicated that inadequate damages were awarded as a compromise on the issues of liability and damages. *Corman, Administrator v. WEG Dial Telephone, Inc.,* 194 Kan. 783; *Timmerman v. Schroeder,* 203 Kan. 397, 401-02, 454 P.2d 522 (1969). In fairness to the trial judge here, we note that plaintiffs did not file a motion for a new trial; thus, the trial judge had no opportunity to rule on the adequacy of the verdict. Such a motion is not necessary, however, for us to consider the issue on appeal. *Atkinson v. Orkin Exterminating Co.,* 5 Kan. App. 2d 739, 625 P.2d 505, *aff'd* 230 Kan. 277, 634 P.2d 1071 (1981). The jury in this case was instructed to fix damages without considering the percentage of fault of the parties. In view of the instruction on comparative fault, of the instruction not to consider the percentage of fault in fixing damages, and of the jury's finding of fault within a range which we feel is supported by the record, we are unable to say the inadequate damages were awarded as a compromise on the issue of liability.

Reversed and remanded with directions to grant a new trial on the issue of damages only.