<hr />

## LUSK v. KERSHOW ET AL.

1. PROBATE MATTERS—APPEALS.—Under the revised statutes of 1883 two methods were provided for taking appeals from judgments of the county courts to the district courts.   One relating to and fixing the procedure in appeals in ordinary civil actions ; the other prescribing the manner of perfecting appeals from judgments and orders entered in probate proceedings.
2. APPEAL BOND—TIME FOR FILING MAY BE EXTENDED.—County courts sitting for probate business are authorized to extend the time for filing an appeal bond.
3. GUARDIANS AND WARDS—ENFORCEMENT OF AGREEMENTS.—An agreement entered into by guardians acting for minors, by which such guardians, with the approval of the court of probate, undertake for their wards to assume another's debt, will not be enforced in the absence of proof that such contract was apparently in the interest of the wards at the time it was made.

*Appeal from District Court of Arapahoe County.*

THIS case was submitted to the court below mainly on an agreed statement of facts.   From this it appears that John.

S. Fillmore died at the county of Arapahoe on the 1st day of December, 1864, leaving as his sole heirs at law his widow, Elizabeth M. Fillmore, and two minor sons, John Norman Fillmore and John Septa Fillmore. On the 20th day of the same month Amos Steck and others were appointed administrators upon his estate and duly qualified as such. Thereafter and prior to January, 1, 1868, Elizabeth M. Fillmore intermarried with one Jeremiah Kershow. On the 30th of June, 1868, she was appointed *administratrix de bonis non* of her former husband's estate in lieu of the first named administrators. She qualified in this capacity and acted as such administratrix until her death, which occurred in December, 1876.

On the 25th day of July, 1874, plaintiff in error, D. H. Lusk, filed in the probate court of Arapahoe county a claim against the Fillmore estate, amounting to $6,013.86. This demand was for services rendered the estate in the adjustment of a certain claim in favor of the United States against the said estate. On the 4th day of September, 1874, the Widow Fillmore, administratrix, appeared in the probate court " by Jeremiah Kershow, her agent," and called up the claim of Lusk, and upon motion the same was allowed as a valid claim against the Fillmore estate.

As the issue of her marriage with Kershow there were born two sons, Max Howard and Carlton Montgomery Kershow. Upon the death of Mrs. Kershow, Charles B. Patterson was appointed administrator of the Fillmore estate, and, also, administrator of the estate of Elizabeth N. Kershow, and guardian of the minors, John Norman and John Septa Fillmore. In March, 1882, Jeremiah Kershow died leaving as his only heirs the said Max Howard and Carlton Montgomery Kershow. By the terms of his will John Henry Kershow and Thomas S. Clayton were appointed executors. These executors afterwards duly qualified, and one of them, John Henry Kershow, acted as the guardian of the Kershow children. On the 2d day of June, 1882, a petition was presented to the probate court setting forth the terms of a certain

proposed agreement and praying permission to be allowed to enter into such agreement. At this time Charles B. Patterson represented the estates of John S. Fillmore and Elizabeth M. Kershow as administrator, and the estates and persons of John Norman and John Septa Fillmore as guardian. The estate of Jeremiah Kershow was represented by John Henry Kershow and Thomas N. Clayton as administrators; and the estate and persons of Max Howard and Carl Montgomery Kershow, minors, were represented by John Henry Kershow as guardian. In this petition divers differences and controversies between the heirs of Kershow and Fillmore were set forth, with a project for their adjustment, and leave of court was asked by the representatives to enter into an agreement for the settlement of such differences. Such permission having been given, the agreement was entered into. The clause of this agreement of settlement, particularly relied upon to charge appellee in this case, provides that the heirs of Kershow should pay or cause to be paid " one-half of every other claim or demand of whatsoever nature which may, and hereafter be lawfully and finally established as a judgment against the said John S. Fillmore's estate; or which may now or hereafter be or become a valid lien upon the same or any part thereof, and to save and keep harmless forever, the said John Norman and Septa Fillmore and their estates thereform."

On the 16th day of June, 1887, the plaintiff in error filed in the probate court a statement of the amount claimed from the defendants in error on said judgment. This claim with interest then amounted to the sum of $8,005.87. This was contested, and after several judgments had been entered and each in turn modified by the probate court, finally on the 3d day of November, 1887, the court entered judgment in favor of plaintiff in error and against the defendants in error for the sum of $5,515.53. From this judgment the defendants in error prayed an appeal to the district court of Arapahoe county. This appeal was allowed, conditioned upon defendants entering into bond in the sum double the amount of said judgment, to be approved and filed on or before the

25th day of November, 1887. On the 25th of November, 1887, the defendants in error filed an appeal bond in the county court, together with a stipulation entered into by the respective attorneys extending the time for filing the bond until November 30, 1887.

. When the cause reached the district court plaintiff in error filed two separate motions to dismiss the appeal. These motions were each overruled and exceptions to such rulings duly preserved. Upon a re-trial of the cause in the district court, judgment was entered for the appellants.

Messrs. THOMAS & THOMAS, for plaintiff in error.

Messrs. WELLS, McNEAL, & TAYLOR, for defendants in error.

CHIEF JUSTICE HAYT delivered the opinion of the court:

. The first and second assignments of error have been argued together. These relate to the failure of the district court to dismiss the appeal upon appellant's motion. The record shows that on the 3d day of November, 1887, a final judgment was entered in the county court sitting for probate business, and until the 25th day of November was allowed, within which to file an appeal bond for the purpose of taking the case to the district court.

Appellees contend: First,—That the manner of taking an appeal in this case is fixed by the general act providing for appeals from the county to the district court, and that the appeal must be dismissed under this statute as construed in *Hunt v. Arkell et al.*, 13 Colo., 543, because no notice of the taking of the appeal was served as required.

Secondly,—That if the statutes in reference to appeals from judgments of the county court, rendered in probate matters, is to govern, the appeal should be dismissed, as it was not taken within ten days from the rendition of judgment in the county court.

In this state county courts have jurisdiction in certain criminal matters and, also, in all civil causes where the claim or demand does not exceed the sum of $2,000. In addition to this, such courts are given unlimited jurisdiction in the settlement of estates, the appointment of guardians, etc.

Several provisions are to be found in the statutes with reference to appeals from the judgments of the county courts in civil actions, and it becomes necessary to determine in this case what particular provision governs where the judgment is rendered by the court sitting for the transaction of probate business. By § 1085, Mills Ann. Stats., it is provided, "Appeals may be taken to the district court of the same county from all final judgments and decrees of the county court, except judgments by confession, by any person aggrieved by any such final judgment or decree; * * * "

At the time this section was adopted there existed upon our statute books another provision which may now be found in § 1097 of Mills Ann. Stats.: " * * * Appeals or writs of certiorari shall be (lie) to the district court of the same county in favor of any or more parties against whom such question or questions have been decided, to be prosecuted by such person or persons in the same manner as appeals and writs of certiorari respectively, when prosecuted from decisions of justices of the peace."

Was this statute in force at the time of the praying and allowance of the appeal in this case? It is contended that it was changed by the act of 1885. This act does not in terms repeal the former statute, nor is there anything in the latter act, which by implication must necessarily be taken as effecting this result. An examination of the act of 1885 shows conclusively that it relates exclusively to appeals from judgments of the county court, rendered in the exercise of its ordinary civil jurisdiction. We are therefore of the opinion that at the time this appeal was taken, as at present, two methods of taking an appeal, at least, were provided for by our statutes. One relating to and fixing the procedure in appeals in ordinary civil cases; the other, prescribing the man-

ner of perfecting appeals from judgments and orders entered in probate proceedings. As the judgment from which the present appeal was taken was entered in the course of the administration of an estate, the latter statute must control the determination of the motion to dismiss the appeal.

·It is contended that under this act the party praying the appeal must file the required bond within ten days from the rendition of the judgment from which the appeal is taken. This argument is based upon the statute requiring appeal bonds, in cases of appeals from judgments of justices of the peace, to be filed within ten days. It is said that this provision is mandatory and must govern the present appeal by reason of the language of § 1097, *supra*, providing that the appeal must be prosecuted in the same manner as appeals and writs of *certiorari* from decisions of justices of the peace. Of this provision it is to be observed that by its terms it does not require that appeals from the county court in probate matters can be taken only within the same time as appeals from decisions of justices of the peace. And in our opinion the county court is authorized in the exercise of a reasonable discretion to extend the time for filing the bond in an appeal of this kind.

It is a court of general jurisdiction, and this jurisdiction is unlimited in the determination of matters growing out of the settlements of estates. It is given a wide discretion in many matters of grave, as well as those of minor importance, and no reason is perceived why its powers· should·be unreasonably circumscribed in regard to the mere matter of time within which an appeal bond may be filed. Authority to extend the time is necessary to the ends of justice in some cases, as is well illustrated by the case at bar. Here one of the parties, against whom judgment was rendered, was, at the time, without the state. He was defending simply in a representative capacity. It was necessary that he should sign this bond in order that the appeal might be perfected, and it sufficiently appears that his signature could not be procured within the time fixed by the statute in the absence of

an order of court extending the time without entailing upon the estate the unnecessary expense of bringing him to Colorado. The bond having been filed within the time fixed by the court the motion to dismiss was properly overruled.

Another point which needs but a passing notice is the contention that under § 2679, Mills Ann. Stats., the appellants failed to perfect the appeal, as they did not pay the fees necessary to have the case docketed and placed on the calendar of the appellate court. This provision of the statute, however, does not affect this case, as the amendment providing for the payment of costs especially provides that it should not affect—"Actions pending at the time of the taking effect of this act, shall not be deemed as affected thereby." This action was pending at the time of the adoption of such amendment, and consequently is expressly exempted from the operation of the amendment. The judgments of the district court denying the motions to dismiss the appeal were right and cannot be disturbed.

In reference to the Lusk claim it is to be noted that it was not originally a claim against the Kershow estate. It arose out of the settlement of the Fillmore estate at a period over nine years after the death of Fillmore. Whether it should properly be considered as a claim against that estate or only against the administratrix, it is not necessary to determine in this case. It is certain that if chargeable at all against the Kershow estate, it became such charge solely by reason of the contract bearing date June 3, 1882.

In reference to such contracts Schouler in his work on Domestic Relations, in the chapter entitled—"Acts Void and Voidable," while admitting that the authorities are frequently in conflict as to what should be considered the voidable acts of an infant, and what should be held absolutely void in reference to contracts of the latter class, says:— * * * "Certainly if any contract can be so pronounced on mere inspection it is a contract whereby an infant becomes bound upon another's debt. " Schouler, Domestic Relations (2d ed.)," § 537. And it seems clear that the guardians of these minor

heirs were without authority to bind their wards in the manner attempted by the agreement upon which this action is founded. And the fact that such agreement was permitted by the probate court without proof, does not change the rights of the parties thereto. Among the numerous authorities upon this point we cite the following: *Hutchinson v. McLaughlin*, 15 Colo. 492; *Enos et al. v. Capps*, 12 Ills. 255; *Bennett v. Bradford*, 132 Ill. 269; *McEndree v. McEndree*, 12 Ind. 97; *Daniels Chan. Pl. Pr.* (4th ed.) p. 169, *et seq.; Bank of U. S. v. Ritchie*, 8 Peters, 128; *More v. Hillebrant*, (Texas) 65 American Dec. 118 and notes.

Appellants contend that the Kershow heirs received certain property under the agreement and still retain the same. Under these circumstances it is said that it would be contrary to equity and good conscience to allow them to repudiate the agreement. When heirs and others are held responsible at all for such demands it is upon the theory that they have received property from the deceased which in equity is subject to such demands. Schouler's Ex. & Admin., 1st ed., § 445. Such is neither shown by the evidence to have been the case here nor is this an equitable action brought to subject specific property to the payment of such charges. It is a simple suit at law in which the plaintiff demands a personal judgment. Such judgment, if obtained, would · be enforceable against any of the property of the estate, whether the same came from the Fillmore estate or the Kershow estate; or has been since accumulated.

It seems clear that such an action cannot be maintained. The judgment of the district court will be affirmed.

*Affirmed.*