## CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* OSGOOD, ADMINISTRATOR.

[No. 4,639. Filed February 16, 1905. Rehearing denied April 20, 1905. Transfer denied June 23, 1905.]

1. STATUTES.—*Death by Wrongful Act.—Action.*—The act of 1899 (Acts 1899, p. 405, §285 Burns 1901) creates a right of action for the death of a person by wrongful act and vests the right to maintain same in the personal representatives of the decedent, the assets thereof inuring to the surviving husband or wife, the decedent's children and the next of kin, respectively, according to the law for the distribution of personal property. p. 36.

2. SAME.—*Death by Wrongful Act.—Action.—Beneficiary.*—The widow or widower, children or next of kin have no right of action under the act of 1899 (Acts 1899, p. 405, §285 Burns 1901) for the death of decedent by wrongful act, and they can not compromise nor control such action. p. 37.

3. ALIENS.—*Personal Property.—Inheritance.*—At the common law aliens could inherit personal property and dispose thereof the same as citizens. p. 37.

4. STATUTES.—*Construction.—Death by Wrongful Act.—Aliens.*—The act of 1899 (Acts 1899, p. 405, §285 Burns 1901) does not in terms change the common-law rule relative to the distribution

of personal estate to aliens, and a restriction of the benefits of such act to citizens alone creates an exception which the act does not contain. p. 38.

5. STATUTES.—*Death by Wrongful Act.*—The purpose of the act of 1899 (Acts 1899, p. 405, §285 Burns 1901) is to create a right of action against any one wrongfully causing the death of another, the policy being to make life more secure, and the alienage of the beneficiaries should not defeat the purpose thereof. p. 39.

6. SAME.—*Death by Wrongful Act.—Action.—Basis of.*—The basis for the right of action given by the act of 1899 (Acts 1899, p. 405, §285 Burns 1901), creating a right of action for death by wrongful act, is the wrongful act of defendant resulting in such death. p. 39.

7. SAME.—*Aliens.—International Policy.*—That interpretation of the act of 1899 (Acts 1899, p. 405, §285 Burns 1901), creating a right of action for death by wrongful act, will be given which accords with the international policy of Great Britain as shown by the construction placed upon Lord Campbell's act (9 & 10 Vict., c. 93), after which such act of 1899 was modeled. p. 39.

8. SAME.—*Death by Wrongful Act.—Aliens.—Action for Death.* —A right of action is created by the act of 1899 (Acts 1899, p. 405, §285 Burns 1901) in favor of an administrator for the death of his decedent by wrongful act of defendant, though the beneficiaries of such action are alien nonresidents, enlightened international policy requiring same. p. 41.

9. TRIAL.—*Jury.—Voir Dire.—False Answers.—Motion to Discharge Jury.—When Questions Thereon Presentable.*—Where a juror on his *voir dire* denied falsely that he was a party to an action for damages, and defendant's attorneys ascertained or should have ascertained such denial to be false in time to present a motion to discharge the jury before the return of the verdict, they can not after the return of the verdict object, such holding giving the defendant two chances for a favorable verdict. p. 42.

10. EVIDENCE.—*Railroads.—"Usual" or "Customary" Way of Placing Cars on Track.*—Testimony, that the way certain cars were placed on the tracks was the "customary" way and that there was nothing "unusual" in the way of handling the car at the time of the injury and that it is "often necessary to leave cars" not in the clear, is properly excluded. p. 43.

11. TRIAL. — *Instructions.—Assuming Facts.—Interrogatories.— Harmless Error.*—An instruction, assuming that decedent was in the employ of defendant, is harmless where the answers to the interrogatories to the jury showed that he was. p. 44.

12.   NEGLIGENCE. — *Contributory.* — *Master and Servant.* — *Railroads.*—*Jury.*—Where defendant's locomotive engineer, while passing a switch on a dark night, ran into a box-car which had been placed on such switch so close as to interfere, and such engineer was killed thereby, the questions of negligence and contributory negligence are for the jury.   p. 44.

From Superior Court of Marion County (62,074); *Vinson Carter,* Judge.

Action by Henry S. Osgood as administrator of the estate of Thomas Holmes, deceased, against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for $3,600, defendant appeals. *Affirmed.*

*Elliott, Elliott & Littleton* and *John T. Dye,* for appellant.

*James E. McCullough* and *Henry H. Lee,* for appellee.

ROBY, J.—Action for damages on account of the death of Thomas Holmes, which it is alleged occurred through appellant's negligence.

The primary question for decision, presented by the assignment of error that the court erred in overruling appellant's motion for a new trial, is whether such action lies when the beneficiaries designated by the statute are aliens, as the evidence discloses that the next of kin were. The question does not seem to have been decided in Indiana, and there is a hopeless conflict of authority in other states.

Our statute corresponding to "Lord Campbell's act" is as follows: "When the death of one is caused by the wrongful act or omission of another, the personal repre-

1.   sentatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he or she (as the case may be) lived, against the latter for an injury for the same act or omission. The action shall be commenced within two years. The damages can not exceed $10,000, and must inure to the exclusive benefit of the widow, or widower (as the case may

be), and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." §285 Burns 1901, Acts 1899, p. 405.

The purpose of this legislation was to provide for some pecuniary compensation to be made by one person for taking the life of another, which, before this enactment, he could not have been required to make. The right to maintain the action is vested in the personal representatives of the deceased. Had the provision gone no further, the fund recovered would have been simply assets of the estate to be disposed of as other assets. The legislature, having the right to·determine what disposition should be made of the fund, charged it with the express trust that it must inure to the benefit of the widow and children, if any, first, and, if no widow or children, then to the next of kin. *Jeffersonville, etc., R. Co.* v. *Hendricks* (1872), 41 Ind. 48, 74; *Memphis, etc., Packet Co.* v. *Pikey* (1895), 142 Ind. 304, 311. The action is brought by the administrator in his representative capacity. *Clore* v. *McIntire* (1889), 120 Ind. 262, 264.

The widow, children and next of kin are not parties, have no right to be parties, and have no right to compromise or control the action. *Yelton* v. *Evansville, etc., R. Co.* (1893), 134 Ind. 414, 21 L. R. A. 158; *Pittsburgh, etc., R. Co.* v. *Moore* (1899), 152 Ind. 345, 357, 44 L. R. A. 638. The damages recovered are by the terms of the statute "distributed in the same manner as personal property of the deceased."

The disability of aliens at common law in respect to the ownership of real estate did not extend to personal property, and aliens were capable of·acquiring, holding and transmitting movable property in like manner as citizens. *Kannreuther* v. *Geiselbrecht* (1884), 28 Ch.·D. 175; *Milne* v. *Moore* (1894), 24 Ont. 456; *Bradwell* v. *Weeks* (1814), 1 Johns. Ch. 206; 2 Am. and Eng. Ency. Law (2d ed.), 81.

The common-law rule has neither been abrogated nor narrowed by any statute of this State. It is difficult to perceive why there should be greater reluctance in making distribution to an alien widow and children or next of kin to the deceased than in distributing to them in the same manner the proceeds of personal property owned by him.

The statute is broad and inclusive in terms. No exception is made where the beneficiaries named are aliens. To deny the action because the widow, children or next of kin are aliens and nonresidents is to incorporate into it a restriction which it does not contain. *Bonthron* v. *Phoenix Light, etc., Co.* (1903) (Ariz.), 71 Pac. 941, 61 L. R. A. 563; *Tanas* v. *Municipal Gas Co.* (1903), 84 N. Y. Supp. 1053, 1059.

In the case of *Jeffersonville, etc., R. Co.* v. *Hendricks, supra,* where the decedent and the administrator were both residents and citizens of Kentucky, and the contention was that the statute applied exclusively to residents of Indiana, the Supreme Court held that the language of the act was so clear and explicit that the question could not arise; that the only condition imposed by the legislature which must exist as a prerequisite to the maintenance of the action is that the decedent might have maintained one himself had he lived, and said, at page 71: "They [the legislature] have not said that the right shall exist only in cases where the deceased was, at the time of his death, a resident or citizen of Indiana; but, given the fact that the death of one has been caused by the wrongful act or omission of another, they leave for the courts solely the inquiry whether, had the injury not been fatal, the injured party could himself have recovered therefor. The above section of the code does not limit the remedy provided for causing the wrongful death of another to resident citizens of this State, and we possess no power to thus limit the operation of the section."

Much less can a legislative intent be implied to exclude from the operation of the statute an Indiana administrator's bringing suit to recover on account of the death of a resident of the State because the ultimate distribution of the proceeds of such action may be made to a nonresident alien. The statute is a remedial one.    *Bonthron* v. *Phoenix Light, etc., Co., supra; Stewart* v. *Baltimore, etc., R. Co.* (1897), 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537; *Lang* v. *Houston, etc., R. Co.* (1895), 144 N. Y. 717, 27 N. Y. Supp. 90, 39 N. E. 858.

The essence of the act is found in that part of it which confers a right of action, and not in that part which provides who shall bring it or how the fund recovered shall be distributed.    Its tendency is to induce care and make human life more secure—considerations of policy which are not affected by the alienage of the beneficiary.    The right of personal security does not depend upon whether the individual's wife and children happen to live abroad.    *Mulhall* v. *Fallon* (1900), 176 Mass. 266, 57 N. E. 386, 54 L. R. A. 934, 79 Am. St. 309.

The wrongful act of the defendant forms the basis of the right.    It is not, therefore, material, in connection with the question now under consideration, whether the statute gives a new right to the administrator (*Pittsburgh, etc., R. Co.* v. *Hosea* [1899], 152 Ind. 412), or provides for the survival of the right possessed by the decedent.    The supreme court of Wisconsin, in *McMillan* v. *Spider Lake, etc., Lumber Co.* (1902), 115 Wis. 332, 91 N. W. 979, 60 L. R. A. 589, wholly overlooked the identity of the fact forming the substance of the action, and denied recovery upon a purely artificial ground.

The point is made that such a suit *mutatis mutandis* does not lie in the courts of Great Britain.    This court is disposed to adopt the rule of reciprocity, and an interpretation of the English authorities is therefore essential.

In England, as in America, there is no right by the common law to recover damages for injuries resulting in death; but in both countries statutes have been passed to remedy this defect. The English statute commonly known as Lord Campbell's act furnishing the model for those adopted in the states.

The point that *mutatis mutandis* the action here prosecuted would not lie in England because of the alienage of the plaintiff is based upon the judgment of Mr. Justice Darling in the case of *Adam* v. *British & Foreign Steam Ship Co.* [1898], 2 Q. B. 430. In that case the learned judge said: "But it is a principle of our law that acts of parliament do not apply to aliens, at least if they be not even temporarily resident in this country, unless the language of the statute expressly refers to them." In the case then being considered the mother of a Belgian alien was seeking to recover damages for his death, caused by a collision on the high seas between the Belgian ship, upon which the deceased was employed, and a British ship, through the negligence of the latter. In giving his judgment the justice said: "Now, I ask, is there anything in Lord Campbell's act to show that it was intended to apply for the benefit of foreigners not resident in this kingdom? * * * I see no implied, and certainly no express, intention to give to foreigners out of the jurisdiction a right of action which even British subjects had not until the passing of 9 and 10 Vict., c. 93. Moreover, that statute provides, in s. 2, for the division of the damages recovered amongst the various persons to be benefited in proportions to be assessed by the jury. It appears to me impossible to hold that it was intended, there being no expression to that effect, to cast upon juries such a duty as this in regard to the distant family of a deceased, and possibly polygamous, alien."

The effect of this judgment is to establish a precedent that, where an alien is out of the jurisdiction at the time

the injuries resulting in his death occurred, his personal representative can not recover therefor under Lord Campbell's act.

The case, however, is very different where the alien is within the jurisdiction when the accident occurred. The test of the question is the jurisdiction of the court. In *The Zolverein* (1856), 2 Jur. (N. S.) ·429, Dr. Lushington said: "The power of this country is to legislate for its own subjects all over the world, and as to foreigners within its jurisdiction, but no further." The same view is expressed by Lord Esher in *Colquhoun* v. *Heddon* (1890), 25 Q. B. D. 129, 135, and Jervis, C. J., in *Jefferys* v. *Boosey* (1853), 4 H. L. C. *815, *946.

The recent case of *Davidsson* v. *Hill* [1901], 2 K. B. 606, reviews many authorities, and directly holds that under Lord Campbell's act an action will lie against a British subject for negligently causing the death of a person within England, his next of kin being aliens.

The rule of reciprocity, if adopted in this case, would therefore require that the benefits of §285 Burns 1901, Acts 1899, p. 405, be extended to the nonresident next of kin of the deceased, he having been within the jurisdiction of this State at the time the fatal accident occurred. This conclusion accords with the dictates of natural justice and of that enlightened policy essential to the commercial and social progress of the Nation. It is also supported by the clear weight of American authorities, of which the following are a portion: *Mulhall* v. *Fallon, supra; Vetaloro* v. *Perkins* (1900), 101 Fed. 393; *Kellyville Coal Co.* v. *Petraytis* (1902), 195 Ill. 215, 63 N. E. 94, 88 Am. St. 193; *Renlund* v. *Commodore Mining Co.* (1903), 89 Minn. 41, 93 N. W. 1057; *Augusta R. Co.* v. *Glover* (1893), 92 Ga. 132, 18 S. E. 406; *Luke* v. *Calhoun County* (1868), 52 Ala. 115; *Bonthron* v. *Phoenix Light, etc., Co., supra; Tanas* v. *Municipal Gas Co., supra.*

It appears by affidavits filed in support of appellant's motion for a new trial that a juror, while being examined as to his competency, was asked if he or any member of his family had ever had any suit or claim for damages against any person or corporation, and he answered in the negative. It is further shown by the affidavits that he at the time was plaintiff in an action against a street car company to recover damages on account of alleged personal injuries; that said case had been once tried, the jury disagreeing, and had been again set for trial. Counter affidavits are filed, which neither in terms admit nor deny that such questions were asked and so answered. After the jury had retired, appellant's attorneys learned that such an action, brought by a person of the same name as the juror, was then pending, and examined the record which showed such fact, together with the name of his attorney. The office of such attorney was less than a block distant from theirs. Quick communication could have been had with him by means of the telephone. The bailiff and page in the court room knew that the juror was plaintiff in said cause. The official stenographer's notes of the evidence, in connection with the answers made by the juror while being examined as to his competency, would have disclosed such identity, and were readily accessible. The attorneys learned at 11 o'clock of the pendency of such action. The jury returned its verdict not earlier than 2:30 o'clock p. m., and immediately thereafter one of appellant's attorneys presented and filed a typewritten motion for leave further to interrogate the juror, which motion was overruled and exception taken. The judge and the attorneys were present in court prior thereto. The matter might have been called to the court's attention before the verdict, but nothing in that respect was said or done. Had a motion to discharge the jury been made, it must be presumed that it would have been sustained. A party can not take chances upon a favorable verdict's being returned, and thereafter

avoid the effect of one against him because of misconduct of the jury, known to him prior to the rendition of its verdict. *Messenger* v. *State* (1899), 152 Ind. 227.

The facts disclosed by the affidavit lead to the irresistible inference that appellants knew, or ought to have known, of the alleged misconduct prior to the rendition of the verdict.

Decedent was sitting on the seat box in the cab of one of appellant's engines, which was running backwards, at the time of his death. A box-car had been placed on an adjacent track so near to the one over which the engine was being run that the cab of the latter struck it in passing. It was shown that such car should have been placed at least a sufficient distance away to clear a man on the outside of a freight-car. The night was dark. The engineer did not see the interfering car until it was in contact with the cab. There was another man—the fireman—on the seat with the deceased. The fireman was facing the way the engine was moving. The decedent had the position from which the outlook ahead of the engine is ordinarily kept. A switch-engine was moving on the tracks. The fireman did not discover the interfering car before the engine.

The jury, in answers to interrogatories, finds that decedent's head was out of the window of the cab at the time of and immediately before the collision. It also finds, in answer to other interrogatories, that it was not light enough to enable him to see the car if he had been looking at the time of and just before the accident; that there were not sufficient lights in the yard to enable him to do so. The facts thus stated accord with evidence in the case.

Certain witnesses, after having fully stated the facts relative to the position of the cars and the location of the tracks, were asked: "State whether or not there was anything unusual in what you did that night, in the way you handled that car," and "whether the way in which the cars were put in was the customary way of doing," and, also, "whether it is not often necessary to

leave cars temporarily so that they are not in the clear," and other kindred questions. There was no error in sustaining the objection to this class of questions. Facts having been fully stated, the inference of negligence or no negligence was for the jury, and not for witnesses, to state.

Objection is also made that the court in one of its instructions assumed that decedent was in the employ of appellant at the time of his death. If the criticism were conceded to be accurate, it would not justify the reversal of the judgment, it appearing from the answers of the jury to interrogatories that he was in such employment at such time. *Indianapolis St. R. Co.* v. *Brown* (1904), 32 Ind. App. 130.

The instructions, taken together, fully and fairly presented the issue. The substance of the requests which were refused is contained in those which were given.

The questions of negligence and contributory negligence are disposed of by the verdict, which is in both regards not without support in the evidence. Judgment affirmed.