## PATEK v. AMERICAN SMELTING & REFINING CO.

(Circuit Court of Appeals, Eighth Circuit. June 11, 1907.)

No. 2,388.

DEATH—ACTION FOR WRONGFUL DEATH—RIGHT OF NONRESIDENT ALIEN TO BENEFIT OF STATUTE.

The Colorado statute, giving a right of action for wrongful death (Mills' Ann. St. §§ 1508–1510), first, to the husband or wife of the deceased, or, second, to his child or children, or, third, to his father and mother, or the survivor of them, includes among its beneficiaries nonresident aliens having the prescribed relationship to the deceased.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 37.]

In Error to the Circuit Court of the United States for the District of Colorado.

James F. Drake, for plaintiff in error.

Charles R. Brock (Milton Smith, on the brief), for defendant in error.

·Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This was an action instituted in the Circuit Court of the United States for the District of Colorado by a father to recover damages for the death of his son. The complaint alleged that the plaintiff was a nonresident alien, that the defendant was a New Jersey corporation engaged in smelting and refining ores in Colorado, and that the son, while in the employ of the defendant at one of its smelting plants at Pueblo, Colo., came to his death through its negligence. Upon a demurrer to the complaint, the case was disposed of adversely to the plaintiff upon the theory that the statute of Colorado giving a right of action for death negligently caused by another, when rightly interpreted, excludes nonresident aliens from among the beneficiaries therein named.

The statute reads (Mills' Ann. St. §§ 1509, 1510):

"Sec. 1509. Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover ·damages in respect thereof, then, and in every such case,. the person who, or the corporation which would have been liable, if death had ensued, shall be liable to an action for damages notwithstanding the death of the party injured.

"Sec. 1510. All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in the first section of this act, and in every such action the jury may give such damages as they may deem fair and just, not exceeding five thousand (5,000) [dollars], with reference to the necessary injury resulting from such death, to the surviving parties, who may be entitled to sue; and also having regard to the mitigating or aggravating circumstances attending any such wrongful act, neglect or default."

Section 1508—section 1 of the original act—declares that the damages may be sued for and recovered, first, by "the husband or wife," or, second, by "the heir or heirs," or, third, by "the father and mother,"

or the survivor of them; and there is nothing in the context restrict-ing these terms to residents or citizens, or indicative of a purpose to use them with other than their natural and ordinary meaning, save that it appears the words "heir or heirs" are used in the sense of child or children—that is, lineal descendants.

As the case is presented to us, the sole question for decision is: Are nonresident aliens excluded from among the beneficiaries, because not expressly mentioned, notwithstanding the natural and ordinary import of the language used includes the relatives named, wherever they may reside, and whatever may be their citizenship? The affirmative of the question is said to be sustained because (1) the laws of a country have no intrinsic force proprio vigore beyond its territorial jurisdiction and limits; (2) statutes generally apply to those only who owe obedience to the Legislature which enacts them, and whose interests it is its duty to protect; and (3) it is usual, in conceding or granting rights to nonresident aliens, to make express mention of them. Such is in effect the ruling in Pennsylvania and Wisconsin in respect of statutes similar to the one now before us (Deni v. Pennsylvania R. R. Co., 181 Pa. 525, 37 Atl. 558, 59 Am. St. Rep. 676; Maiorano v. Baltimore & Ohio R. R. Co., 65 Atl. 1077, 216 Pa. 402; McMillan v. Spider, etc., Co., 115 Wis. 332, 91 N. W. 979, 60 L. R. A. 589, 95 Am. St. Rep. 947); but the negative of the question is maintained in Massachusetts, Illinois, Delaware, Minnesota, Arizona, Iowa, Indiana, Virginia, New York, Ohio, Kentucky, and Kansas (Mulhall v. Fallon, 176 Mass. 266, 57 N. E. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309; Kellyville Coal Co. v. Petraytis, 195 Ill. 215, 63 N. E. 94, 88 Am. St. Rep. 191; Szymanski v. Blumenthal, 3 Pennewill [Del.] 558, 52 Atl. 347; Renlund v. Commodore Mining Co., 89 Minn. 41, 93 N. W. 1057, 99 Am. St. Rep. 534; Donthron v. Phœnix, etc., Co. [Ariz.] 71 Pac. 941, 61 L. R. A. 563; Romano v. Capital, etc., Co., 125 Iowa, 591, 101 N. W. 437, 68 L. R. A. 132, 106 Am. St. Rep. 323; Cleveland, etc., Co. v. Osgood, 36 Ind. App. 34, 73 N. E. 285; Pocahontas Collieries Co. v. Rukas' Adm'r, 51 S. E. 449, 104 Va. 278; Alfson v. Bush Co., 182 N. Y. 393, 75 N. E. 230, 108 Am. St. Rep. 815; Pittsburgh, etc., Co. v. Naylor, 73 Ohio St. 115, 76 N. E. 505, 112 Am. St. Rep. 701, 3 L. R. A. [N. S.] 473, and note; Trotta's Adm'r v. Johnson, 90 S. W. 540, 28 Ky. Law Rep. 851; Atchison, etc., Co. v. Fajardo [Kan.] 86 Pac. 301). In England the rulings are conflicting and unsettled. Thus in Adam v. British & Foreign Steamship Co., [1898] 2 Q. B. 430, it was held by Darling, J., that, for the reasons before stated, Lord Campbell's act, the parent statute, does not give a right of action for the benefit of a nonresident alien, while in the later case of Davidsson v. Hill, [1901] 2 K. B. 606, that ruling was disapproved by Kennedy and Phillmore, JJ., and a right of recovery on behalf of a nonesrident alien widow was sustained. The negative of the question also has support in Luke v. Calhoun County, 52 Ala. 115, where it was held that a statute giving a right of action against a county to the husband or widow, or next of kin, of any person assassinated or murdered therein, could be as effectually invoked by a nonresident alien widow as if she were a resident and citizen; in Jeffersonville, etc., Co. v. Hendricks, 41 Ind. 48, 71, Philpott v. Missouri Pac. Ry. Co., 85 Mo. 164, Chesapeake, etc.,

Co. v. Higgins, 85 Tenn. 620, 4 S. W. 47, and Augusta Ry. Co. v. Glover, 92 Ga. 132, 142, 18 S. E. 406, where it was held that the rights conferred by a statute like the one before us are not restricted to persons domiciled in the state; and in Dennick v. Railroad Co., 103 U. S. 11, 19, 26 L. Ed. 439, where, in denying a contention that the provision in the New Jersey statute, "Every such action shall be brought by and in the names of the personal representatives of such deceased person," limited the right of action to a personal representative appointed in that state, it was said:

"The advocates of this view interpolate into the statute what is not there. * * * The statute says the amount recovered shall be for the exclusive benefit of the widow and next of kin. Why not add here, also, by construction, 'if they reside in the state of New Jersey'? It is obvious that nothing in the language of the statute requires such a construction. Indeed, by inference it is opposed to it. The first section makes the liability of the corporation or person absolute where the death arises from their negligence. Who shall say that it depends on the appointment of an administrator within the state?"

In the federal courts there have been but few direct rulings upon the question. Baltimore & Ohio R. R. Co. v. Baldwin, 75 C. C. A. 211, 144 Fed. 53, and Zeiger v. Pennsylvania R. R. Co. (C. C.) 151 Fed. 348, turned upon the interpretation of state statutes by the courts of the states enacting them; the former giving effect to the ruling in Ohio and the latter to that in Pennsylvania. Vetaloro v. Perkins (C. C.) 101 Fed. 393, arose under the Massachusetts statute in advance of its interpretation by the state court, and the right of recovery on the part of a nonresident alien was sustained in a strong opinion by Circuit Judge Colt, in the course of which it is said:

"To exclude nonresident aliens from the right to maintain an action under section 2 is to incorporate into the act a restriction which it does not contain. It is to refuse compensation to a certain class of persons for a real injury recognized by statute law. It is to relieve employers with respect to some employés from the exercise of due care in the employment of safe and suitable tools and machinery and competent superintendents. It is to offer an inducement to employers to give a preference to aliens and to discriminate against citizens. It is to hold that the Legislature of Massachusetts intended by this act to declare that employers should not be liable for the grossest negligence which results in the instant death of an alien employé in cases where his widow or next of kin happen to reside in a foreign country. * * * The purpose of section 2 of the Massachusetts statute was to remove a common-law obstacle, and to create a right of action for an admitted tort. The language of the section does not restrict the right to any particular class or classes of persons. It says 'the widow of the deceased'; 'the next of kin.' These words comprehend every widow, and all next of kin, whether citizens, residents, aliens, or nonresident aliens. The only qualification mentioned is that the next of kin must be dependent upon the wages of the employé for support. I can find no sound or just reason for holding that the Legislature intended to exclude nonresident aliens from the benefits of this section. * * * This whole act relating to the liability of employers is highly remedial. It was designed to benefit all employés. It has received, and should continue to receive, a liberal construction. It certainly should not receive a narrow and inequitable construction, founded upon any distinction between citizens and aliens, or residents and nonresidents."

Brannigan v. Union Gold Mining Co. (C. C.) 93 Fed. 164, arose under the present Colorado statute, and, in the absence of an inter-

pretation thereof by the state court, it was held, following the reasoning in Deni v. Pennsylvania R. R. Co., supra, and distinguishing Luke v. Calhoun County, supra, that nonresident aliens are excluded from among the beneficiaries because not expressly mentioned. That ruling was followed by the Circuit Court in the present case. The question still remains an open one in the Supreme Court of Colorado; but it is settled by its decision in Hayes v. Williams, 17 Colo. 465, 30 Pac. 352, that the statutory provisions under which this action is brought "are remedial, not penal"; that "they are in aid of the common law, not in derogation thereof"; and that they "should unquestionably receive a liberal construction." And this view of like statutes obtains in other jurisdictions. Thus, in Stewart v. Baltimore & Ohio R. R. Co., 168 U. S. 445, 448, 18 Sup. Ct. 105, 42 L. Ed. 537, it was said by Mr. Justice Brewer, speaking for the court:

"A negligent act causing death is in itself a tort, and, were it not for the rule founded on the maxim 'actio personalis moritur cum persona,' damages therefor could have been recovered in an action at common law. The case differs in this important feature from those in which a penalty is imposed for an act in itself not wrongful, in which a purely statutory delict is created. The purpose of the several statutes passed in the states, in more or less conformity to what is known as 'Lord Campbell's Act,' is to provide the means for recovering the damages caused by that which is essentially and in its nature a tort. Such statutes are not penal, but remedial, for the benefit of the persons injured by the death."

Another matter which militates rather strongly against putting a restrictive construction upon the present statute for the purpose of excluding nonresident aliens from its benefits is that the policy of Colorado towards them has been one of marked liberality. At an early period in her history she adopted the following statute (Mills' Ann. St. § 99):

"Sec. 99. All aliens may take, by deed, will or otherwise, lands and tenements and any interest therein, and alienate, sell, assign and transmit the same to their heirs, or any other persons, whether such heirs or other persons be citizens of the United States or not, and upon the decease of any alien having title to, or interest in, any land or tenements, such land and tenements shall pass and descend in the same manner as if such alien were a citizen of the United States; and it shall be no objection to any person having an interest in such estate, that they are not citizens of the United States, but all such persons shall have the same rights and remedies, and in all things be placed on the same footing, as natural-born citizens of the United States. The personal estate of an alien, dying intestate, who at the time of his death shall reside in this state, shall be distributed in the same manner as the estate and natural-born citizens; and all persons shall be entitled to their proper distributive shares of such estate under the laws of this state, whether they are aliens or not."

And, while this statute was subsequently modified by taking from nonresident aliens the right to thereafter acquire any interest in or right to use a body or tract, in compact form, of agricultural, arid, or range land exceeding 2,000 acres, the modification was accompanied by this significant declaration:

"Sec. 103. This act shall not be so construed as to prevent any nonresident alien, or corporation or syndicate organized under the laws of any foreign government, from acquiring the title to lands within the limits of any incorporate town or city in this state, or from acquiring the title to and possess-

ing and working any of the mines in this state, or from engaging in any industry in this state to the same extent as citizens or residents of the United States or this state, save and except only as limited by the provisions of section one of this act." Mills' Ann. St. §§ 100, 103.

But apart from the policy of the state manifested in this legislation, we think that the better reason, as also the greater weight of adjudged cases, forbids that nonresident aliens be excluded, by interpretation, from among the beneficiaries designated in the statute. The injury to them is not infrequently the same as if they were residents, the Legislature had full authority to include them, they are within the natural and ordinary import of the language employed, and neither the context nor the humane and corrective purpose of the statute suggests any occasion for a restrictive interpretation. No question of giving a law extrinsic force proprio vigore beyond the territorial jurisdiction and limits of the state enacting it is involved. All that is done is to remove a common-law obstacle to obtaining reparation, and in that sense to provide a remedy, for the commission within the state, by those within its jurisdiction and subject to its authority, of recognized wrongs to others, within its jurisdiction and entitled to its protection, whereby injury is done to still others, within or without its jurisdiction. In other words, the statute relates only to wrongs done within the state, imposes no duty upon any one not subject to its jurisdiction, and gives a right of action to persons without its jurisdiction only when they are injured by a wrong done within its jurisdiction. It is elemental that whether or not a wrong gives rise to a right of action for resulting injury is to be determined by the law of the place where the wrong is committed; but it is never said that such law is given extraterritorial operation merely because the person injured, whom it invests with a right of action, happens to be a nonresident or a nonresident alien.

As we are of opinion that the Circuit Court erred in its interpretation of the statute, the judgment is reversed, with a direction to set aside the ruling upon the demurrer and to take such other proceedings as may not be inconsistent with this opinion.