[No. 5442.]
[No. 3104 C. A.]

FERRARA v. THE AURIC MINING COMPANY.

Damages — Death by Another — Action by Wife — Nonresident Alien.

Mills' Ann. Stats., §§ 1508-1510, provides in substance that whenever the death of a person shall be caused by the neglect of another, and the neglect is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages, then the person who would have been liable if death had not ensued, shall be liable in an action for damages in a sum not exceeding five thousand dollars to the wife of such deceased. Held, that a nonresident alien widow is entitled to recover damages in Colorado for the wrongful act of defendant causing her husband's death.—P. 509.

*Error to the District Court of Pueblo County.*
*Hon. John H. Voorhees, Judge.*

Action by Fenice Ferrara against The Auric Mining Company. From a judgment for defendant, plaintiff brings error.        *Reversed.*

Mr. M. J. GALLIGAN, for plaintiff in error.

Mr. C. W. WATERMAN, for defendant in error.

CHIEF JUSTICE STEELE delivered the opinion of the court:

The complaint alleges, in substance, that the plaintiff is the wife and widow of Pietro Ferrara, deceased; that on June 26, 1897, the deceased was employed by the defendant as a miner, and that while so employed and engaged in working in the mine of said defendant the said deceased was killed by reason of the negligence of the said defendant, and without fault of the said deceased. On January 24, 1899, the answer of the defendant was filed, and on February 27th following, the plaintiff filed her reply. During the trial, the defendant, over plaintiff's objection, was granted leave to file an amendment to its answer, which amendment is as follows: "Defendant is informed and believes, and so alleges, that plaintiff is and at all times heretofore has been a resident of Italy, and that plaintiff is not now and never has been at any time a resident of the state of Colorado or of the United States of America, and is not entitled to bring or prosecute this action in any of the courts of the state of Colorado."

On May 6, 1901, on motion of the defendant, judgment was rendered on the pleadings for the reason that no reply had been filed to the said fourth defense. The motion was sustained, and final judgment of dismissal and that the defendant go hence

without day, was duly entered. Motion for new trial was denied, and the plaintiff took the case by writ of error to the court of appeals.

It is insisted by the defendant that as a demurrer to the fourth defense was overruled, it became the duty of the plaintiff to reply, and, having failed to reply, judgment upon the pleadings was properly entered.

The plaintiff not having replied to the fourth defense, the matters stated therein must be taken as true. The defendant was entitled to judgment upon the pleadings if the matters set forth in the fourth defense are sufficient in law to defeat the plaintiff's action; if they are not sufficient, then the judgment must be reversed. The only question, therefore, for our consideration is: Is the plaintiff, being a nonresident alien, entitled to maintain the action?

Counsel contend: "That the overwhelming weight of authority, and of all the well-reasoned decisions in this country and in England, establish the proposition that, since the right to maintain an action of this kind is wholly dependent upon statute, a nonresident alien has no standing in the Colorado courts. The overwhelming weight of authority is that the laws of a state or country are made for the benefit of its citizens, or those who, by becoming denizens or residents of the state or country, have entrusted themselves to the governmental department of that country, thereby submitting themselves to its jurisdiction, and entitling themselves to the benefit of its laws, unless expressly excluded from their operations."

The fact is, that there are but three cases in this country which sustain the contention of counsel that nonresident aliens may not maintain actions of this character. The first case is that of *Deni v. The Pennsylvania Railroad Co.*, by the supreme

court of Pennsylvania, reported in volume 181, at page 525, of the Pennsylvania State Reports, in which it is held, under the act of April 26, 1855 (P. L. 309), which gives a right to recover damages for an injury causing death, that a nonresident alien mother has no standing to maintain an action against a citizen of Pennsylvania to recover damages for the death of her son. In the course of the opinion the court said: "Our legislation on this subject is in accord with the English statute of August 26, 1846, and, therefore, the decisions of the English courts construing this statute are often referred to in cases grounded upon our acts of April 15, 1851, and April 26, 1855. But no case has been brought to our notice in which an English court has held that a nonresident alien is entitled to the benefits conferred by the act of 1846. The same may be said of the decisions of the courts of our sister states having statutes similar to our own.  *  *  *  Our statute was not intended to confer upon nonresident aliens rights of action not conceded to them or to us by their own country, or to put burdens on our own citizens to be discharged for their benefit. It has no extra-territorial force, and the plaintiff is not within the purview of it. While it is possible that the language of the statute may admit of a construction which would include nonresident alien husbands, widows, children and parents of the deceased, it is a construction so obviously opposed to the spirit and policy of the statute that we cannot adopt it."

The next in point of time is the case *Brannagan et al. v. The Union Gold Mining Co.*, reported in 95 Fed. Rep., page 164, decided by Judge Hallett in the year 1899, in which he held, that nonresident aliens are not entitled to the benefit of the Colorado statute, and followed the decision of the Pennsyl-

vania court. He says, after quoting from the Pennsylvania case: "Under the circumstances, I see no reason for denying the force and effect of this opinion. It appears to be founded upon good reason, and to be as applicable in Colorado as it is in Pennsylvania."

The next is the case of *McMillan, Admr., v. Spider Lake S. M. & L. Co.,* 115 Wis. 232, wherein it was held, that the Wisconsin statutes do not give any right of action for the loss sustained by nonresident alien relatives of a person whose death was caused by a wrongful act, neglect or default.

These are the only cases from the courts of this country which have been cited in support of the proposition that nonresident aliens, heirs or relatives of a person whose death was caused by wrongful act, neglect or default, are not entitled to maintain an action; but there is no dearth of authority sustaining the position of the plaintiff in this case that such action may be maintained. In the states of Iowa, Ohio, Indiana, Minnesota and New York it is held that an action will lie by the administrator of a deceased person to recover damages for his death, even though the beneficiaries named in the statute be nonresident aliens. In the states of Georgia, Missouri and Tennessee it is held that an action may be maintained by a nonresident of the state. In Georgia, the court, speaking through Chief Justice Bleckley, significantly says: "Whenever a Georgia mother can recover, any other mother can do so, under like circumstances. The act is general in its terms and has no hint of any discrimination in favor of residents or against nonresidents." In Virginia the action is maintainable by resident friendly aliens, while in Illinois, Delaware, Kansas, Massachusetts and Arizona it is held that the action is maintainable by nonresident aliens. Such also

is the holding by the United States circuit court of appeals for the eighth circuit, and the latest case we have from England holds that the personal representative of a subject of Norway is entitled to maintain an action in the English court to recover damages for an injury resulting in death.

The cases are as follows: *Romano v. Brick & Pipe Co.*, 125 Ia. 591; *Railway Co. v. Naylor*, 73 Ohio St. 115; *Cleveland, etc., Ry. Co. v. Osgood, Admr.*, 36 Ind. App. 34; *Renlund v. Commodore Mining Co.*, 89 Minn. 41; *Alfson v. Bush Co.*, 182 N. Y. 393; *Augusta Railway Co. v. Glover*, 92 Ga. 132; *Philpott v. Mo. Pac. Ry. Co.*, 85 Mo. 164; *Chesapeake, Ohio & Southwestern R. R. Co. v. Higgins*, 85 Tenn. 620; *Pocahontas Collieries Co. v. Rukas, Admr.*, 104 Va. 278; *Kellyville Coal Co. v. Petraytis*, 195 Ill. 215; *Szymanski v. Blumenthal & Co.*, 3 Pennewill (Del.) 558; *A. T. & S. F. R. R. Co. v. Fajardo*, 74 Kan. 314; *Mulhall v. Fallon*, 176 Mass. 266; *Banthron v. Phoenix Light Co.*, 8 Ariz. 129; *Patek v. American Smelting & Refining Co.*, 154 Fed. 190; *Davidson v. Hill*, 2 K. B. (1901) 606; and they are cases arising under statutes authorizing a recovery for the benefit of the relatives of a deceased where the death was caused by a wrongful act or through negligence or default. In the case *Luke v Calhoun County*, 52 Ala. 165, the court held, construing a statute of the state of Alabama entitled "An act to suppress murder, lynching," etc., "that statutes passed for the security and protection of life, in the absence of clear and unexceptionable language forcing a contrary conclusion, will be held to apply as well to aliens and mere sojourners as to citizens. The fact that the person murdered and the widow, or next of kin, were aliens, is no defense to a recovery under the act." Under the act in question the husband or widow or next of kin of the person murdered is entitled to maintain an action for damages.

The statutes of the states are based upon the English statute known as "Lord Campbell's Act," and while they differ in matters of detail, they are all based upon the English Act. In many of the states it is provided that the personal representatives of the deceased may maintain the action for the benefit of the heirs, while in Colorado and other states it is provided that the action may be maintained by the beneficiaries named in the statute. But whether the action is brought by the administrator or by the heirs can make no material difference. If brought by the administrator, the recovery is paid to the heirs named in the statute, and the difference is merely in the form of the action. The purpose of the statute, in all jurisdictions, is to award indemnity to the heirs of a person who has sustained injuries resulting in death through a wrongful act. In every statute we have examined, whether the action is authorized to be brought by an administrator or by the heirs, the amount recovered is not subject to the payment of the debts of the deceased, but the entire amount is to be paid to the beneficiaries. Nor have we seen a statute which is not general in its terms or which expressly discriminates against aliens and in favor of citizens. In every case we have cited as sustaining plaintiff's contention, the decision is grounded upon the proposition that it is within the power of the legislature to grant benefits to aliens, and that unless the legislature has undertaken, in express language, to discriminate in favor of citizens and against aliens, the courts will not discriminate in favor of citizens. In the Virginia case cited, the beneficiaries happened to be residents, although aliens; the court, nevertheless, held that the weight of authority in this country maintains the right of nonresident alien relatives of the deceased to receive the benefit of the statute.

The latest case to which our attention has been

directed is that of *Patek v. The American Smelting
& Refining Co.,* decided in June, 1907, by the circuit
court of appeals of this circuit, by Judge Van Devan-
ter, wherein he reviews the authorities and holds that
under our statute a nonresident alien has the right
to maintain an action; and this upon the theory that
to deny such a person the benefit of the statute it
becomes necessary to interpolate into the statute
words discriminating against aliens, and upon the
further ground that the policy of Colorado with re-
spect to aliens has been such as to indicate that the
legislature did not intend to discriminate in favor of
citizens.    Judge Van Devanter quotes at length from
a decision of Colt, Circuit Judge, in 101 Fed. Rep.
393, in which Judge Colt says: "To exclude non-
resident aliens from the right to maintain an action
under section 2 is to incorporate into the act a restric-
tion which it does not contain.    It is to refuse com-
pensation to a certain class of persons for a real in-
jury recognized by statute law.    It is to relieve em-
ployers with respect to some employees from the
exercise of due care in the employment of safe and
suitable tools and machinery and competent super-
intendents.    It is to offer an inducement to employers
to give a preference to aliens and to discriminate
against citizens.    It is to hold that the legislature of
Massachusetts intended by this act to declare that
employers should not be liable for the grossest negli-
gence which results in the instant death of an alien
employee in cases where his widow or next of kin
happen to reside in a foreign country."

Our constitution, section 15, article 15, provides
that: "It shall be unlawful for any person, com-
pany or corporation to require of its servants or em-
ployees, as a condition of their employment or other-
wise, any contract or agreement whereby such per-
son, company or corporation shall be released or dis-

charged from liability or responsibility on account of personal injuries received by such servants or employees while in the service of such person, company or corporation, by reason of the negligence of such person, company or corporation, or the agents or employees thereof, and such contracts shall be absolutely null and void.''

We cannot believe that our legislature, the first under the constitution, with this provision of the constitution before it, could have intended to release persons or corporations from liability for damages caused by their negligence, by limiting the liability to those persons who happened to be citizens of the United States and residents of Colorado at the time the action was brought. To do so would be to encourage negligence and to enable the employers of labor to select aliens to the discrimination of American citizens, thus relieving themselves of liability. The public policy of this state with reference to aliens seems to be to not discriminate against them, but rather to encourage and protect them in every reasonable way. There is no prohibition against aliens having access to our courts, in fact the treaty between the United States and the Kingdom of Italy expressly grants to the citizens of Italy free access to our courts of justice to maintain and defend their rights. If Ferrara had not died, there is no question but that he might have maintained an action in the courts of this state, and no good reason is apparent why his widow should not be entitled to maintain this action.

It is contended that the general rule, that legislative enactments apply only to the citizens within the jurisdiction of the place where the legislature sits and that the laws of the states and countries have no extra-territorial effect, should control; but the overwhelming weight of authority is that these damage

statutes which authorize the maintenance of an action by the relatives of a deceased do not have the effect of giving any extra-territorial effect to the statutes if aliens or nonresidents are permitted to maintain actions under them.  In the discussion of the proposition that the laws of the state or country have no extra-territorial effect, the supreme court of Ohio, in the case *Railway Company v. Naylor, supra,* has this to say: "The plaintiffs have not sought to enforce the laws of Ohio in another jurisdiction, but they have come into the courts of Ohio to enforce the laws of Ohio in their own behalf.  The objection made to this is that the statute of Ohio does not apply in favor of nonresident aliens.  If there had been three men, instead of one, killed at the same time, and the widow of one was a citizen of Ohio, the widow of another a resident alien and the widow of the third a nonresident alien, it is admitted that the first and second could recover and it is contended that the third could not; yet the language of the statute is the same as to the rights of all of these parties.  It seems to us, therefore, that it is not a question of territorial jurisdiction; but that when a nonresident alien comes into the courts of the state for redress under the laws of the state, as he may do, it is merely a question of construction of the statute to determine whether he is excluded from its benefits.  We have no disposition to controvert the proposition that the statute of one state cannot impose obligations or liabilities on citizens of another state or country, not residing in the state enacting the statute; but we take it to be a self-evident proposition that a state, if there are no constitutional limitations on the general legislative power, may confer rights, privileges or immunities upon nonresident aliens which they may accept, if not prohibited by the government to which they owe

allegiance.   Thus, in our own state, all disabilities of aliens as to inheritance are removed by statute.''

And in *Romano v. Brick & Pipe Co., supra,* the court says:  ''The accident happened in Iowa; the person injured, as well as the defendant, is a resident of Iowa; and the wrong done by the defendant, if any, was done in Iowa.   It is difficult, therefore, to see how it can be urged that any question of extra-territoriality arises.''

If, as contended by counsel, statutes must be understood in general to apply to those only who owe obedience to the laws, then no person, unless he be an actual resident of the state of Colorado, can recover under the statutes, because the statute of this state has no greater force in one of the states of the Union than it has in Italy, and it would be contrary to every decision cited to hold that a resident of one of the states could not maintain an action for the negligent killing of a person domiciled in this state, if such nonresident would be entitled to maintain the action if a resident of this state.   This point is discussed in *Romano v. Brick & Pipe Co., supra,* and the court says, page 597:  ''It is true''—speaking of cases from Georgia, Missouri, Alabama and Kentucky—''it is true that these cases relate to right of recovery by a relative who is a citizen and resident of another state, and counsel in the case before us have urged that the rule as to nonresident aliens may well be different; but, if their contention is correct, that to give force to the statute in favor of a nonresident alien is to give it extra-territorial effect, then these decisions are in point, for a state statute has no more effect or operation in another state of the Union than in a foreign country; and it is no answer to say that, by a provision of the federal constitution, citizens of the other states of the Union are not to be denied the privileges and immunities accorded to citizens of the state, for,

if the statute is to be applied only for the benefit of those who are subject to state law, then residents of another state are excluded, as not among the persons for whose benefit the statute was passed."

The language of Chief Justice Kent of the supreme court of Arizona is, we think, directly in point when he says: "We do not think that in order to entitle an alien to maintain this action specific authority therefor must be granted such alien by the legislature. The act is broad and comprehensive, and by its terms includes any surviving husband, wife, child, or parent, irrespective of their residence or citizenship; and this includes aliens, in the absence of any restrictive legislation. We know of no rule of law that prohibits the legislature from extending such rights to nonresident aliens, or prevents their accepting the same."

Mr. Justice Holmes, when chief justice of the supreme court of Massachusetts, said in the case *Mulhall v. Fallon*, 176 Mass. 266, in construing the Massachusetts employers' liability act: "We come then to the more difficult question, whether the plaintiff can claim the benefit of the act. However this may be decided, it is not to be decided upon any theoretic impossibility of Massachusetts law conferring a right outside her boundary lines.  *  *  *  It is true that legislative power is territorial, and no duties can be imposed by statute upon persons who are within the limits of another state. But rights can be offered to such persons, and if, as is usually the case, the power that governs them makes no objection, there is nothing to hinder their accepting what is offered."

And, speaking of the purposes of the statute, he says: "In other words, it is primarily a penalty for the protection of the life of a workman in this state.

We cannot think that workmen were intended to be less protected if their mothers happened to live abroad; or less protected against sudden than against lingering death. In view of the very large amount of foreign labor employed in this state, we cannot believe that so large an exception was silently left to be read in.''

When the case *Cleveland, etc., Ry. Co. v. Osgood* was first appealed to the appellate court of Indiana, it was held that an administrator could not maintain an action under the Indiana statute, where the next of kin who would be entitled to recover are nonresident aliens, but upon a second appeal (in 1905) the court held that such action could be maintained.—36 Ind. App. 34.

In the course of the opinion the court said: ''The essence of the act is found in that part of it which confers a right of action, and not in that part which provides who shall bring it or how the fund recovered shall be distributed. Its tendency is to induce care and make human life more secure—considerations of policy which are not affected by the alienage of the beneficiary. The right of personal security does not depend upon whether the individual's wife and children happen to live abroad.''

Although this court mentions the fact that the nonresident next of kin of the deceased was within the jurisdiction of Indiana at the time the fatal accident occurred, there is no difference in principle, it seems to us, between this case and the others cited. If the statute includes nonresidents and aliens as beneficiaries, it of course cannot be affected by reason of the fact that they happen to be within the jurisdiction of the court at the time the injury causing death occurred. Our treaty provides that citizens of both parties may appear by counsel in all courts for the enforcement of their rights, and it is therefore not

essential for the enforcement of any right that the citizens of another nation appear in person before the court.   The statute makes no distinction between citizens and aliens, residents and nonresidents; and public policy does not require the making of any such discrimination.   Indeed, the policy of the state would seem to require that no such discrimination should be made.

As the legislature has not undertaken to limit the benefits accruing under the statute to those who happen to be subjects of this country, for us to do so by the interpolation of words into the statute for the purpose of effecting that result would be nothing short of a crying injustice.   The statutes, §§ 1508, 1509, 1510, Mills' Ann. Stats., declare in substance that whenever the death of a person shall be caused by the neglect of another, and the neglect is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages, then the person who would have been liable if death had not ensued shall be liable in an action for damages in a sum not exceeding five thousand dollars to the wife of such deceased.   The plaintiff shows by her complaint that she is the wife of the deceased and that her husband's death was caused by the negligence of the defendant.   She answers the description of the person entitled to the benefit under the statute; and, following the great weight of authority upon the subject, we hold that she is entitled to maintain the action notwithstanding the fact that she is a nonresident of Colorado and is a subject of the king of Italy.   The judgment is reversed.   *Reversed.*

Mr. JUSTICE GODDARD and Mr. JUSTICE BAILEY concur.